# EXHIBIT 1



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**December 10, 2025 10:13**

Confirmation Nbr. 3698278

SANDRA WORTHING ALVES                           CV 25 129498

     vs.

                            **Judge:**  MAUREEN CLANCY

INTERNET TRUCKSTOP PAYMENTS LLC, ET AL

**Pages Filed:**  30

# IN THE COURT OF COMMON PLEAS

# CUYAHOGA COUNTY, OHIO

Case No.: _____

Plaintiff,

**Judge: _____**

**SANDRA WORTHING ALVES**

**d/b/a All Directions Trucking**
**MC#1710778**

**25540 Byron Dr.**

**North Olmsted OH 44070**

_____

**v.**

**SUPER COMPLAINT FOR DAMAGES,**

 **DECLARATORY JUDGMENT,**

 **INJUNCTIVE RELIEF,**

 **CIVIL RICO (STATE AND FEDERAL),**

 **ANTITRUST VIOLATIONS**

Defendant 1,

**JURY DEMAND ENDORSED**

**INTERNET TRUCKSTOP PAYMENTS LLC.**
**1444 S. Entertainment Ave., Suite 110**
**Boise, Idaho 83709**
**Defendant.**

_____

**Defendant 2**

**INTERNET TRUCKSTOP PAYMENTS, LLC**

**d/b/a TRUCKSTOP FACTORING**

**222 N Plymouth Ave**

**New Plymouth, ID 83655**

**and**

**1444 S Entertainment Ave, Suite 110**

**Boise, ID 83709**

_____

**Defendant 3**

**TRUCKSTOP PAYMENTS LLC**

**222 N Plymouth Ave**

**New Plymouth, ID 83655**

_____

**Defendant 4**

**LOADPAY LLC**

**1444 S Entertainment Ave**

**Boise, ID 83709**

_____

**Defendant 5**

**GRIZELLA LLC (SAFERWATCH / POSTEVERYWHERE)**

**Principal place of business:**

**Dickinson, North Dakota**

_____

**Defendant 6**

**RMIS – REGISTRY MONITORING INSURANCE SERVICES**

**5388 Sterling Center Dr**

**Westlake Village, CA 91361**

_____

**Defendant 7**

**DENIM LABS, INC. (DENIM FACTORING)**

**111 Town Square Place**

**Suite 1203 #1067**

**Jersey City, NJ 07310**

_____

**Defendant 8**

**HIGHWAY APP, INC.**

**5960 Berkshire Ln, Suite 06-101**

**Dallas, TX 75225**

**and**

**5931 Greenville Ave #5620**

**Dallas, TX 75206**

---

**Defendant 9**

**DAT FREIGHT & ANALYTICS (DAT SOLUTIONS, LLC)**

**8405 SW Nimbus Avenue**

**Beaverton, OR 97008**

---

**Defendant 10**

**JOHN DOE BROKERS 1–50**

**Addresses presently unknown**

---

**Defendant 10**

**JOHN DOE FACTORING PARTNERS 1–50**

**Addresses presently unknown**

# I. INTRODUCTION

NOW COMES Plaintiff Sandra Worthing Alves ("Plaintiff"), owner of All Directions Trucking, and for this Super Complaint states as follows.

Plaintiff alleges, asserts, and contends that Defendants Internet Truckstop Group, LLC (Truckstop.com), Internet Truckstop Payments, LLC d/b/a Truckstop Factoring, Truckstop Payments LLC, LoadPay LLC, Grizella LLC (SaferWatch/PostEverywhere), RMIS – Registry Monitoring Insurance Services, Denim Labs, Inc. (Denim Factoring), Highway App, Inc., DAT Freight & Analytics (DAT Solutions, LLC), and John Doe Brokers 1–50 and John Doe Factoring Partners 1–50 together form and operate what Plaintiff refers to as "The Integrated Freight Data-Control Conglomerate Enterprise."

Plaintiff asserts that the Enterprise uses interlocking systems of compliance onboarding, identity and "fraud" verification, freight visibility, factoring leverage, receivables diversion, and sweeping public lien encumbrances to exert control over small and mid-sized motor carriers, including Plaintiff. Plaintiff contends that this is not merely a private dispute, but part of a broader pattern that has helped drive what is widely known as The Great Freight Recession, during which more than 113,000 carriers have exited the industry in last four years and climbing.

Plaintiff asserts that the United States Department of Transportation ("DOT") and the Federal

Motor Carrier Safety Administration ("FMCSA") granted her operating authority on May 30,

2025, and that mere days later, on June 4, 2025, Truckstop Factoring caused a sweeping UCC-1

financing statement to be filed in Ohio, claiming a blanket lien over all of Plaintiff's assets for a

term of five (5) years, despite no executed factoring agreement and no valid secured obligation.

Plaintiff further asserts that she did not factor any freight receivables with any entity until July

31, 2025, long after Truckstop had already filed the lien against her name and business.


Plaintiff contends that Highway App, Inc. invited her to join its system through a broker, Five

Star Trucking, too be able to book a load and that when she attempted to do so she discovered

that her newly issued FMCSA authority—granted May 30, 2025—had already been "claimed"

inside Highway's system by a fraudulent, unknown entity as a dispatching service she never

asked for. Plaintiff contends that Highway took approximately ninety (90) days to decommission

that fraudulent Highway attachment/dispatching service, during which time Highway's status

and data continued to affect brokers and All Directions Trucking despite Plaintiff never using

that account to conduct any legitimate business at all whatsoever with Highway. There are only

two fraud prevention platforms that brokers now use to verify carriers and it is RMIS(owned by

Truckstop) and Highway. Highway began operations in 2022, the year The Great Freight

Recession began. The new internet onboarding platform is $150.-$500 a month for brokers and

its free for carriers to get "identity and connections benefits". Highway does not vet any

dispatchers that join the carriers on the platform but they stay on the carriers account indefinitely.

The plaintiff states that it was an offshore dispatching service that established itself into the new

authority and then repeatedly called the Plaintiff to insist that they book a load and demanded to use the Plaintiffs authority to do it. The Plaintiff's phone rang day and night with 100's of calls from offshore dispatching services who were aggressive and entitled to know where truck was, what zip code and what type of trailer. When every conversation ended with hang-ups and they were blocked the phone stopped ringing as much.

Plaintiff alleges that Highway markets itself as "fraud prevention" but, in practice, functions in a manner that facilitates fraud, by blocking legitimate American carriers, tolerating or enabling double-brokering schemes, and favoring offshore dispatchers and foreign bad actors who exploit communication channels such as WhatsApp, Telegram, and Google Voice to operate anonymously. Plaintiff will show, by exhibit, that DAT's platforms knowingly allow and normalize these kinds of communications as standard broker-carrier channels, thereby enabling non-domestic, unqualified actors to interface with U.S. freight.

Plaintiff alleges, on information and belief, that Denim and Highway operate as "sister" companies in the same ecosystem, that RMIS is owned by Truckstop Group, and that Truckstop has now acquired Denim Factoring, resulting in a vertically integrated network wherein the same cluster of interests can control: (1) whether a carrier is deemed "legitimate"; (2) whether a carrier can be onboarded; (3) whether a carrier can see or bid on loads; and (4) where and to whom the carrier's money is paid and how its assets are encumbered.

Plaintiff contends that this structure and conduct amount to an unlawful restraint of trade, attempted monopolization, and/or monopolization in violation of the Sherman Act, 15 U.S.C. §§ 1 and 2, actionable by Plaintiff through civil remedies under Section 4 of the Clayton Act, 15 U.S.C. § 15, and that Defendants' actions also constitute "racketeering activity" and a "pattern" under Ohio R.C. 2923.31–2923.34 and 18 U.S.C. § 1962 (civil RICO).

Plaintiff further asserts that there is no other adequate remedy at law that would allow her to address, in a single proceeding, the coordinated actions of all these Defendants, and that this case is not just a problem for All Directions but a problem in all directions—for carriers nationwide, for the integrity of the supply chain, and for the public at large. Plaintiff asserts that as a federally regulated motor carrier, she has both standing and a duty to bring these issues forward so that a jury of Ohio citizens may decide whether this conduct should be permitted to continue.

---

## II. PARTIES

1. Plaintiff Sandra Worthing Alves is a natural person residing at 25540 Byron Drive, North Olmsted, Ohio 44070. She is the owner-operator of All Directions Trucking, a federally authorized motor carrier operating under DOT No. 4368789 and MC No. 1710778. FMCSA granted Plaintiff's operating authority on May 30, 2025.

2. Defendant Internet Truckstop Group, LLC (Truckstop.com) is an Idaho limited liability company with principal places of business at 222 N Plymouth Ave, New Plymouth, ID 83655, and 1444 S Entertainment Ave, 1st Floor, Boise, ID 83709.

3. Defendant Internet Truckstop Payments, LLC d/b/a Truckstop Factoring is an Idaho limited liability company with offices at 222 N Plymouth Ave, New Plymouth, ID 83655, and 1444 S Entertainment Ave, Suite 110, Boise, ID 83709, engaged in factoring and receivables-purchasing in the freight industry.

4. Defendant Truckstop Payments LLC is an affiliated entity with an address at 222 N Plymouth Ave, New Plymouth, ID 83655, associated with Truckstop-branded payment operations.

5. Defendant Load Pay LLC is an affiliated payment platform with an address at 1444 S Entertainment Ave, Boise, ID 83709.

6. Defendant Grizella LLC (Safer Watch/Post Everywhere) is a North Dakota entity with principal operations in Dickinson, North Dakota, providing carrier compliance and posting services and integrated into the Truckstop Group family of services.

7. Defendant RMIS – Registry Monitoring Insurance Services is a compliance-gatekeeping and insurance-verification service with an address at 5388 Sterling Center Dr, Westlake Village, CA 91361. Plaintiff alleges RMIS is heavily integrated with, influenced by, and/or effectively controlled by the Truckstop ecosystem.

8. Defendant Denim Labs, Inc. (Denim Factoring) is a financial and factoring services entity with an address at 111 Town Square Place, Suite 1203 #1067, Jersey City, NJ 07310. Upon information and belief, Denim's operations have been merged into or integrated with Truckstop financial systems.

9. Defendant Highway App, Inc. is an identity-verification and "fraud-prevention" company with listed addresses at 5960 Berkshire Ln, Suite 06-101, Dallas, TX 75225, and 5931 Greenville Ave #5620, Dallas, TX 75206. Upon information and belief, Highway's

substantive operations and ownership structure raise questions about true domicile and foreign control, despite a Texas LLC registration.

10. Defendant DAT Freight & Analytics (DAT Solutions, LLC) is a freight matching, load-board, and analytics company with an address at 8405 SW Nimbus Avenue, Beaverton, OR 97008.

11. Defendants John Doe Brokers 1–50 are freight brokers whose specific identities are presently unknown, who relied upon or integrated with the above platforms in ways that restricted, diverted, or impaired Plaintiff's freight and receivables.

12. Defendants John Doe Factoring Partners 1–50 are financial entities whose identities are presently unknown but who may have participated in, benefitted from, or assisted in the enforcement of the liens, NOAs, and enterprise conduct described herein.

13. Collectively, these Defendants comprise and operate within the Integrated Freight Data-Control Conglomerate Enterprise referenced in this Complaint.

---

## III. JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction under Ohio Constitution Article IV, Section 4(B) and R.C. 2305.01, as Plaintiff seeks monetary damages exceeding the jurisdictional minimum and seeks declaratory and injunctive relief.

15. Plaintiff's claims arise under Ohio statutory and common law, including R.C. Chapter 1309 (Ohio UCC), R.C. Chapter 2721 (Declaratory Judgment), and R.C. 2923.31–2923.34 (Ohio Civil RICO), as well as claims for fraud, negligent and intentional misrepresentation, wrongful lien filing, tortious interference, civil conspiracy, and related causes.

16. Plaintiff further brings civil claims premised upon violations of federal law, including but not limited to Section 1 and Section 2 of the Sherman Act, 15 U.S.C. §§ 1–2, Section 4 of the Clayton Act, 15 U.S.C. § 15, and 18 U.S.C. § 1962 (civil RICO), which may be heard in this Court under principles of concurrent jurisdiction.

17. This Court has personal jurisdiction over all Defendants under R.C. 2307.382 and the Due Process Clause because Defendants transacted business in Ohio, purposefully directed conduct at Plaintiff in Ohio, and caused injury to Plaintiff and her business headquarters in Cuyahoga County, Ohio.

18. Venue is proper in Cuyahoga County under Civ.R. 3(B) because Plaintiff resides in this county, Plaintiff's business is located here, Defendants' wrongful UCC-1 filing affects property in this county, and Plaintiff's economic, reputational, and operational injuries were suffered here.

---

# IV. FACTUAL BACKGROUND

## A. FMCSA Authority and Timeline

19. Plaintiff applied for and was granted FMCSA motor carrier Operating Authority on May 30, 2025.

20. Plaintiff's Authority, once issued, allowed her to lawfully operate as All Directions Trucking in interstate commerce, subject to compliance with DOT and FMCSA regulations.

21. Plaintiff depended upon Defendants' digital systems—Highway, RMIS, Truckstop, DAT, Denim, and related platforms—to gain access to freight, onboard with brokers, and receive payments necessary to maintain her Authority and Operations.

## B. "No Obligation" Factoring and Premature UCC-1 Filing (June 4, 2025)

22. Around the time of her newly issued authority, Plaintiff contacted Truckstop Factoring to explore factoring as a possible financial tool.

23. Plaintiff was repeatedly told that applying for approval was "no obligation", simply a way "to see if you qualify," and that no rights, security interests, or receivables would be transferred unless and until Plaintiff executed a written factoring agreement.

24. Plaintiff did not sign any factoring agreement with Truckstop Factoring or any related entity prior to June 4, 2025, and did not factor any freight with any entity until July 31, 2025.

25. Despite this, on June 4, 2025, only five days after FMCSA granted Plaintiff Authority—Truckstop caused a UCC-1 Financing Statement to be filed with the Ohio Secretary of State, identified as Filing No. OH00290660927.

26. The UCC-1 lists collateral as:

"All assets of the Debtor including, but not limited to, any and all equipment, fixtures, inventory, accounts, chattel paper, documents, instruments, investment property, general intangibles, letter-of-credit rights and deposit accounts now owned and hereafter acquired by Debtor, together with any products and proceeds thereof."

27. The filing further states that Plaintiff agreed not to grant security interest in the collateral to any other entity, and that any such attempt would amount to tortious interference, with Truckstop asserting a claim to proceeds received by any other secured party.

28. UCC-1 was filed for a term of five (5) years, encumbering all of Plaintiff's EVERY AND ALL ASSETS now owned from June 4, 2025  and any acquired assets through the lapse date of Jume 4, 2030, absent termination.

29. Plaintiff never agreed to such terms, never granted Truckstop a security interest in "all assets," and never consented to any non-compete clause regarding other secured parties.

30. Plaintiff contends the UCC-1 is unauthorized, fraudulent, recorded in bad faith, and weaponized as a tool to block or intimidate any competing finance or factoring relationships, as well as to chill Plaintiff's ability to secure capital.

## C. Unauthorized Notice of Assignment and No Factoring Until July 31, 2025

31. In addition to filing the UCC-1, Truckstop Factoring generated and circulated a Notice of Assignment ("NOA") purporting to assign Plaintiff's receivables to Truckstop.

32. This NOA was issued before any valid factoring agreement was executed and before Plaintiff factored any invoice with any entity; Plaintiff did not factor anything until July 31, 2025.

33. The NOA functioned as a representation to brokers that Truckstop owned 100% of Plaintiff's present and future freight receivables and that brokers must remit all payments to Truckstop.

34. Plaintiff denies that she authorized such an assignment or that Truckstop had any right to claim ownership over her receivables at that time.

35. The NOA created confusion and disruption among brokers, impaired Plaintiff's ability to collect her own money, and contributed to the appearance that Plaintiff was encumbered or in default, when in fact she had not yet factored any accounts.

## D. Highway: Fraudulent Claim on New Authority and 90-Day Decommission Delay

36. After FMCSA granted Plaintiff authority on May 30, 2025, Plaintiff was invited by a broker, Five Star Trucking, to join Highway App for identity verification and fraud screening.

37. Upon attempting to onboard with Highway, Plaintiff discovered that her brand-new authority—issued only days earlier—had already been "claimed" inside Highway's system by an unknown, fraudulent entity.

38. Plaintiff had never authorized anyone to use her authority inside Highway, had never set up an account there, and had never engaged the unknown party who had "claimed" her authority.

39. Plaintiff contacted Highway, demanding that the fraudulent account be investigated and removed, and that her authority be released.

40. Plaintiff contends that Highway took approximately ninety (90) days to decommission or remove that fraudulent Highway account, during which time:

a. Plaintiff could not properly onboard under her own name and authority through Highway-connected brokers;

b. Highway's systems continued to influence brokers' perception of Plaintiff's legitimacy; and

c. the fraudulent usage of her authority in Highway's system remained unresolved.

41. Plaintiff contends that Highway maintained and relied upon flawed identity and fraud-prevention protocols that effectively allowed bad actors to get in front of legitimate carriers, including Plaintiff, to exploit their newly issued authorities.

42. Plaintiff further contends that Highway's operations, while presented as "fraud prevention," actually facilitated fraud by failing to promptly protect Plaintiff's new

authority and by allowing extended periods during which offshore, unqualified, or anonymous actors could leverage Highway-linked access.

### E. RMIS, Grizella, DAT, Denim, and the Enterprise's Vertical Integration

43. Plaintiff states that RMIS controls carrier onboarding and insurance verification for many national brokers.

44. Plaintiff contends RMIS relies directly or indirectly on Highway's identity signals, Grizella's Safer Watch data, and Truckstop/Denim financial flags when making onboarding decisions.

45. Plaintiff states that DAT Freight & Analytics controls load-board visibility, allows carriers to search and bid on freight, and offers broker portals and carrier monitoring systems integrated with other Enterprise members.

46. Plaintiff contends that DAT's systems permit and normalize the use of WhatsApp, Telegram, Google Voice, and similar tools for broker-carrier communications, including from offshore actors, without adequate real-world verification or domestic presence, thereby facilitating:

a. double brokering;

b. offshore dispatch services dominating U.S. freight lanes;

c. carriers being used as straw men hauling freight without pay; and

d. stolen and misdirected cargo.

47. Plaintiff will present an exhibit showing how DAT's system explicitly allows and encourages such non-traditional, encrypted, and offshore communication methods as standard contact points.

48. Plaintiff alleges that Denim and Highway operate as "sister" companies in the same strategic sphere, and that Truckstop's acquisition or integration of Denim has created a closed loop wherein the same Enterprise can:

a. label carriers as risky or blocked;

b. restrict their visibility to freight;

c. control or divert their receivables; and

d. impose or threaten liens and NOAs as leverage.

49. Plaintiff contends that this constitutes an unlawful combination and conspiracy in restraint of trade and an attempt to monopolize, if not actual monopolization, in violation of the Sherman Act and Ohio law.

**F. Industry-Wide Harm and Threat to the Supply Chain**

50. Plaintiff states that more than 113,000 carriers have exited the industry in recent years, and contends that the Enterprise's conduct—through Highway verification choke points, Truckstop/Denim factoring practices, RMIS onboarding gates, and DAT's tolerance of offshore bad actors—has materially contributed to a nationwide freight recession.

51. Plaintiff contends that this situation places the American supply chain at risk, as legitimate, compliant carriers are driven out of business, while overseas, opaque, and fraudulent operators fill the gaps.

52. Plaintiff asserts that this is not merely her personal dispute, but a public emergency affecting commerce, safety, and consumer welfare, and that the Department of Transportation's grant of authority to her as a carrier underscores the gravity of what is being undermined by the Enterprise.

## V. CAUSES OF ACTION

**COUNT I – WRONGFUL UCC FILING / BAD FAITH LIEN (R.C. CHAPTER 1309)**

53. Plaintiff incorporates the foregoing paragraphs as though fully restated.

54. Under R.C. Chapter 1309, a financing statement is properly filed only when there is a valid security agreement and a legitimate secured interest.

55. Plaintiff never executed a security agreement granting Truckstop or any related entity a blanket lien on all of her assets.

56. The UCC-1 Financing Statement No. OH00290660927, filed June 4, 2025, for a term of five years, purports to encumber all of Plaintiff's assets based on a non-existent agreement and without any underlying debt.

57. Plaintiff contends this filing was unauthorized, wrongful, and made in bad faith, causing damage to her business reputation, credit, and ability to obtain financing.

58. Plaintiff seeks all remedies available under R.C. 1309.625 and related provisions, including actual damages and statutory remedies for wrongful filing and maintenance of this lien.

## COUNT II – FRAUD AND FRAUDULENT MISREPRESENTATION

59. Plaintiff incorporates the foregoing paragraphs.

60. Truckstop Factoring and related Truckstop entities represented that:

a. Plaintiff's application was "no obligation".

b. no rights would be transferred without a signed agreement;

c. Plaintiff could decide later whether to use factoring; and

d. no liens or assignments would result from mere qualification.

61. Plaintiff relied on these statements in providing information and in electing not to seek other arrangements at the time.

62. In reality, Truckstop caused an NOA and UCC-1 to be issued and filed before any factoring occurred and before any agreement was executed.

63. Plaintiff contends these misrepresentations were material, false, and made knowingly or with reckless disregard for the truth.

64. As a direct and proximate result, Plaintiff suffered economic loss, disruption of business, reputational injury, and severe stress.

65. Plaintiff seeks compensatory and punitive damages for fraud under Ohio law.

## COUNT III – TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS EXPECTANCY

66. Plaintiff incorporates the foregoing paragraphs.

67. Plaintiff had actual and prospective business relationships with brokers and shippers who were prepared to tender freight and payment.

68. Through the NOA, UCC-1 filing, and integrated identity/compliance restrictions, Defendants interfered with these relationships by:

a. redirecting or attempting to redirect payments;

b. causing brokers to question Plaintiff's legitimacy;

c. blocking or delaying onboarding; and

d. limiting freight opportunities.

69. Plaintiff contends such interference was intentional, unjustified, and performed with knowledge of the harm it would cause.

70. Plaintiff seeks compensatory and punitive damages for tortious interference.


## COUNT IV – CIVIL CONSPIRACY

71. Plaintiff incorporates the foregoing paragraphs.

72. Defendants acted in concert and with a common understanding to use their interconnected systems to implement and maintain a wrongful course of conduct aimed at dominating and extracting value from dependent carriers.

73. Plaintiff contends each Defendant played a coordinated role, including factoring, compliance gating, identity verification, load-board control, and communication channels that disproportionately benefit offshore and anonymous actors.

74. As a result of this conspiracy, Plaintiff suffered the injuries described above, and each Defendant is jointly and severally liable for acts done in furtherance of the conspiracy.

## COUNT V – DECLARATORY JUDGMENT (R.C. 2721.03)

75. Plaintiff incorporates the foregoing paragraphs.

76. A real and justiciable controversy exists concerning the validity of the NOA and UCC-1, and Defendants' claimed rights in Plaintiff's assets and receivables.

77. Plaintiff seeks a declaration that:

a. the NOA is invalid, unauthorized, and void;

b. UCC-1 Filing No. OH00290660927 is invalid, unauthorized, and void; and

c. Defendants hold no enforceable lien or ownership rights over Plaintiff's assets or receivables.

## COUNT VI – OHIO CIVIL RICO (R.C. 2923.32)

78. Plaintiff incorporates the foregoing paragraphs.

79. Plaintiff contends that Defendants together form an enterprise under R.C. 2923.31(C) and have engaged in a pattern of corrupt activity including fraudulent lien filings, unauthorized NOAs, payment diversion, and systemic misrepresentation.

80. This pattern has injured Plaintiff's business and is part of a continuing course of conduct affecting trade and commerce.

81. Under R.C. 2923.32 and R.C. 2923.34(E), Plaintiff seeks treble damages, costs, attorney fees (if applicable), and equitable relief.

## COUNT VII – FEDERAL CIVIL RICO (18 U.S.C. § 1962)

82. Plaintiff incorporates the foregoing paragraphs.

83. Plaintiff contends that Defendants constitute an "enterprise" under 18 U.S.C. § 1961(4) and have conducted or participated in that enterprise's affairs through a pattern of racketeering activity, including mail and wire fraud related to false NOAs, deceptive communications, and fraudulent lien filings.

84. This pattern has a substantial effect on interstate commerce and has directly injured Plaintiff's business.

85. Under 18 U.S.C. § 1964(c), Plaintiff seeks treble damages, costs, and attorney fees.

## COUNT VIII – ANTITRUST: SHERMAN ACT § 1 (15 U.S.C. § 1) – UNLAWFUL RESTRAINT OF TRADE

86. Plaintiff incorporates the foregoing paragraphs.

87. Plaintiff contends that Defendants have entered into a contract, combination, or conspiracy in restraint of trade, in violation of 15 U.S.C. § 1, by coordinating their platforms and policies to control access to freight, factoring, and payments.

88. The effect of this combination is to restrain competition among carriers and to favor a closed network of vertically integrated, often foreign-favored, participants.

89. Plaintiff, as a competitor in the freight market, has been injured in her business and property by reason of this unlawful restraint.

90. Plaintiff seeks damages, trebled under 15 U.S.C. § 15, as well as injunctive relief.

# COUNT IX – ANTITRUST: SHERMAN ACT § 2 (15 U.S.C. § 2) – MONOPOLIZATION / ATTEMPTED MONOPOLIZATION

91. Plaintiff incorporates the foregoing paragraphs.

92. Plaintiff contends that the Enterprise has monopoly power, or dangerous probability thereof, in relevant markets including:

a. carrier identity and fraud screening;

b. compliance onboarding;

c. freight matching and visibility; and

d. factoring and receivables control for small carriers.

93. Plaintiff contends that Defendants have willfully acquired or maintained such power through exclusionary and anti-competitive conduct, not through legitimate competition.

94. This monopolistic conduct has caused Plaintiff and other carriers significant harm and has contributed to The Great Freight Recession and artificially created historically low freight rates, while the industry was simultaneously flooded with illegal immigrants who were non domiciled, unqualified new entrants given CDL's by the hundreds of thousands who have largely begun to cause major highway catastrophic events. The immigrants live

in these trucks and are operating illegally and running freight for pennies undercutting 3.5 million American legal truck drivers pay and driving all small carriers out of business by design. There is an alarming trend of unqualified non English-speaking drivers who would not be getting freight at all if DAT, RMIS, Highway, Truckstop and more were not facilitating these opportunities for illegal truck drivers who have risen to power overnight.

95. Plaintiff seeks damages, trebled under 15 U.S.C. § 15, as well as injunctive relief to restore competitive conditions.

---

# VI. NO ADEQUATE REMEDY AT LAW; NOTICE OF FUTURE MOTIONS

96. Plaintiff states that money damages alone cannot fully remedy the ongoing harm caused by the wrongful UCC-1 filing, NOA, and enterprise-level exclusion from critical freight systems.

97. Plaintiff will seek ex parte temporary restraining orders, preliminary injunctions, and declaratory relief under Civ.R. 65 and applicable statutes, to prevent further interference with her receivables, authority, and business.

98. Plaintiff asserts there is no adequate remedy at law that would allow her to fully address the coordinated actions of all Defendants except this consolidated action, and that justice requires that all Defendants be made to answer together for the conduct alleged.

99. Plaintiff further asserts that the issues presented implicate carriers nationwide, the safety and reliability of the supply chain, and the stability of interstate commerce, warranting urgent judicial attention.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sandra Worthing Alves respectfully prays that this Court enter judgment in her favor and against all Defendants, jointly and severally, and grant the following relief:

A. Declaratory Relief

1. A declaration that the Notice of Assignment issued or circulated in Plaintiff's name is unauthorized, invalid, and void.

2. A declaration that UCC-1 Filing No. OH00290660927 is unauthorized, invalid, and void, and that no Defendant holds any valid secured interest in Plaintiff's assets or receivables.

B. Injunctive Relief

3. An order directing the immediate filing of a UCC-3 termination of UCC-1 Filing No. OH00290660927 and removal of the lien from public record.

4. Preliminary and permanent injunctions prohibiting Defendants from issuing or enforcing any NOA, lien, or encumbrance against Plaintiff without her express, informed, written consent.

5.  Injunctions prohibiting Defendants from using identity, fraud-prevention, or compliance systems to retaliate against Plaintiff or to wrongfully suppress her ability to access freight, onboard with brokers, or receive payments.

## C. Compensatory and Consequential Damages

6.  An award of compensatory damages in an amount of $80 Thousand US Dollars.to be proven at trial for lost income, lost loads, lost business opportunities, increased costs, reputational harm, and all other direct and consequential damages.

## D. Punitive and Treble Damages

7.  An award of punitive damages against each Defendant to punish and deter fraudulent, malicious, and oppressive conduct in the amount of $50 Million US Dollars

8.  An award of treble damages under R.C. 2923.34(E) and 18 U.S.C. § 1964(c) and 15 U.S.C. § 15, for Defendants' civil RICO and antitrust violations.

## E. Costs, Attorney Fees, and Interest

9.  An award of Plaintiff's costs of suit, including reasonable attorney fees if and when counsel is engaged, and other litigation expenses.

10. Pre-judgment and post-judgment interest at the maximum rate allowed by law.

F. Other and Further Relief

11. Such other and further legal and equitable relief as this Court deems just, proper, and necessary to fully address the harms alleged and to protect the public interest in a fair, lawful, and stable freight transportation system.

---

## VIII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable as of right under the laws of the State of Ohio and applicable federal law.

---

Respectfully submitted,

_____

Sandra Worthing Alves- sole proprietor

_____

Plaintiff

25540 Byron Drive

North Olmsted, Ohio 44070

440-591-0354

ADT@alldirections247.com

12/10/2025

_____

**VERIFICATION**

I, Sandra Worthing Alves, hereby verify that I am the Plaintiff in the foregoing action; that I have read the foregoing Super Complaint; and that the factual statements contained therein are true and correct to the best of my knowledge, information, and belief. I understand that these statements are made subject to applicable laws and penalties concerning false statements.

_____

Sandra Worthing Alves, Plaintiff

12/10/2025