# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA WORTHING ALVES, | ) | CASE NO.  1:26-cv-00150 |
| | ) | |
| *Plaintiff,* | ) | Judge Daniel A. Polster |
| | ) | |
| *v.* | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **DEFENDANT TOTAL QUALITY** |
| INTERNET TRUCKSTOP PAYMENTS | ) | **LOGISTICS, LLC'S MOTION TO** |
| LLC., *et al.* | ) | **STRIKE PLAINTIFF'S SECOND** |
| | ) | **AMENDED COMPLAINT AND** |
| *Defendants.* | ) | **DISMISS PLAINTIFF'S FIRST** |
| | ) | **AMENDED COMPLAINT** |

## INTRODUCTION

This case purportedly arises out of the former broker/carrier relationship between Plaintiff Sandra Worthing Alves ("Plaintiff") and various named Defendants, including Total Quality Logistics, LLC ("TQL"). TQL is a national leader in the logistics industry, providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and assistance with supply-chain management across the continental United States. Plaintiff was a carrier who previously entered an agreement with TQL (the "Agreement") (Affidavit of Marc Bostwick, attached as Exhibit 1, at ¶4).[1] As part of the Agreement, Plaintiff agreed that any dispute arising out of the parties' business relationship would be venued exclusively in Clermont County, Ohio, which would also have exclusive jurisdiction over the dispute. Ex. A, ¶ 15. For this reason alone, this case should be dismissed as to TQL.

---

[1] It is well-settled that a defendant may introduce pertinent contract documents referred to in the complaint in support of a motion to dismiss. Given TQL's contractual relationship with Plaintiff is referenced numerous times in the Amended Complaint, and is apparently part of her claims, such attachment is warranted here Indeed, the Sixth Circuit considers "[d]ocuments that a defendant attaches to a motion to dismiss [as] part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

Moreover, in the alternative, Plaintiff's claims against TQL are deficient as a matter of law substantively.  For those claims — (1) Civil RICO, (2) Declaratory Judgment, (3) Antitrust, (4) Breach of Contract and (5) Tortious interference with a contract — Plaintiff fails to adequately plead necessary elements.[2] Thus, the Amended Complaint fails to state a claim upon which relief can be granted as to all claims as to TQL. As such, the Amended Complaint should be dismissed as to TQL.

## BRIEF RELEVANT PROCEDURAL FACTUAL BACKGROUND

Plaintiff initially filed this case on December 10, 2025. On December 17, 2025, Plaintiff filed her Amended Complaint. TQL was served with the Amended Complaint December 22, 2025. On January 14, 2026, without seeking leave, Plaintiff filed her Second Amended Complaint. On January 20, 2026, this case was removed from the Cuyahoga County Court of Common Pleas to this Court. For the reasons stated below, Plaintiff's Second Amended Complaint should be stricken, and the Amended Complaint should be dismissed.

## LAW AND ARGUMENT

### A. Plaintiff's Second Amended Complaint Should Be Struck for Failing to Adhere to the Civil Rules, and is thus immaterial.[3]

Before addressing the forum selection clause and deficiencies noted above, it should first be noted that Plaintiff's recently-filed Second Amended Complaint must be stricken. The Federal Rules permit the court to "strike from a pleading an insufficient defense or any redundant,

---

[2] Given that the allegations of the Amended Complaint must be construed in Plaintiff's favor, TQL has made its best effort to determine the actual claims being raised, especially those being raised against TQL. However, even when construing the Amended Complaint in Plaintiff's favor, and giving her every benefit of the doubt, it is nearly impossible to decipher the actual claims alleged against TQL.

[3] FRCP 12(g)(1) permits a party to join 12(b)(6) and 12(f)(2) motions.

2

immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Here, the Second Amended

Complaint must be stricken as immaterial for failing to adhere to Civil Rule 15.

Pursuant to certain time restraints, the Federal Rules permit a party to amend its pleading

"once as a matter of course." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its

pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P.

15(a)(2). The rule is the same under Ohio law.  *See* Ohio Civ. R. 15(A).

Here, Plaintiff amended her initial Complaint on December 17, 2025, as a matter of course.

She then purported to file a second amended complaint on January 14, 2026; however, she did not

receive consent or court leave prior to filing. As such, the Second Amended Complaint must be

stricken from the record. The Amended Complaint remains as the operative complaint but should

nevertheless still be dismissed for the reasons outlined below.

### B.  The Claims Asserted Against TQL Were Filed in the Wrong Venue.

To begin, and pursuant to Civil Rule 12(b)(6) this matter should be dismissed as to TQL

because it was filed in the wrong venue.[4]

#### 1.  The Parties' Forum Selection Clause is Enforceable, Warranting dismissal.

"On a motion pursuant to Rule 12(b)(6), the court only needs to determine whether the

forum selection clause is enforceable and applicable; if it is, then the suit should be dismissed."

*W.G. Tomko, Inc. v. Franklin Cnty. Bd. of Comm'rs, No.* 2014 U.S. Dist. LEXIS 11495, 347037,

at *8 (S.D. Ohio Jan. 30, 2014). First, Courts generally consider three factors in resolving forum-

---

[4] Recent case law in this judicial district has made clear that, pursuant to the Sixth Circuit "[t]he proper mechanism for enforcing a forum selection clause is either Fed. R. Civ. P. 12(b)(6) or on the doctrine of *forum non conveniens*." *Republic Steel v. Metals*, 2025 U.S. Dist. LEXIS 172132 citing *Bracken v. DASCO Home Med. Equip., Inc.*, 954 F. Supp. 2d 686, 693 (S.D. Ohio 2013); *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009). Nevertheless, given this motion is TQL's first responsive pleading, TQL expressly preserves its 12(b)(3) improper venue defense.

selection clause issues: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Curleys Transp. v. Ohio Truck Sales, LLC*, 2025 U.S. Dist. LEXIS 165331 (N.D. Ohio 2025) citing *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) (citing *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999)).  Where there is a mandatory forum selection clause, as is the case here, Plaintiff bears the burden of demonstrating that the clause should not be enforced for these reasons.  *Wong*, 589 F.3d 821, 828.

Here, Plaintiff entered into an Agreement where she specifically consented to exclusive venue and jurisdiction in Clermont County, Ohio, and waived the ability to object to jurisdiction, for any claims that arose either between her and TQL, or out of the Agreement. Ex. A, ¶ 15. Enforcing the clause would not deprive Plaintiff of her day in court, as she can attempt to assert the same claims in the proper venue, and Plaintiff will be unable to fulfill her burden of demonstrating that the forum selection clause is the product of fraud or overreaching.

### 2.   Plaintiff's Claims Are Covered by the Forum Selection Clause.

Because Plaintiff signed a mandatory, enforceable forum selection clause, the only way for her to escape enforcement of the forum selection clause is if she can demonstrate that the claims she asserts in the Amended Complaint are not covered by the clause.  This, she cannot do.

Here, the Agreement is clear that it covers any and all claims between her and TQL. It explicitly states that it covers "**<u>any dispute between the Parties, including, without limitation, those arising under or related to this Agreement</u>**, will be brought in that court, which will have exclusive jurisdiction over such dispute." Ex. A, ¶ 15. (emphasis added). As such, the forum

4

selection clause covers the litany of claims Plaintiff has alleged against TQL, which means the Agreement controls, and they were filed in the wrong venue. Plaintiff cannot articulate any facts to demonstrate otherwise, and the case should be dismissed as to TQL.

### C. Even if Venue were Proper, Plaintiff has still Failed to State a Claim Against TQL.

In the alternative, Plaintiff's claims should be dismissed for failure to state a claim substantively against TQL. Dismissal of a complaint is necessary under Civil Rule 12(b)(6) when the complaint does not contain sufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions and a formulaic recitation of the elements of the cause of action" are insufficient. *Id*. Indeed, the Plaintiff must allege facts that "nudge[] [its] claims across the line from conceivable to plausible." *Id*. at 548. Because the specific line separating the plausible from the merely conceivable is not always clear, the reviewing court is to "draw on its judicial experience and common sense" in making the determination of what a plausible claim looks like. *Iqbal*, 556 U.S. at 663-664 (2009). Here, Plaintiff is unable to prove any set of facts which would entitle her to relief, and thus her Amended Complaint as to TQL must be dismissed.

### 1. Plaintiff Has Not Stated a Claim for Civil RICO, either under Federal or State law.

In the Amended Complaint, Plaintiff makes various allegations of federal and state RICO violations. "A substantive RICO claim brought under § 1962(c) has four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Doe v. Varsity Brands, LLC*, N.D.Ohio No. 1:22-CV-02139, 2023 U.S. Dist. LEXIS 134515, at *62 (Aug. 2, 2023), quoting

4924-7032-9226, v. 2

*Courser v. Allard*, 969 F.3d 604, 621 (6th Cir. 2020). A plaintiff alleging RICO claims "must also establish that he suffered an injury to 'business or property' because of the defendant's unlawful conduct." *Doe*, 2023 U.S. Dist. LEXIS 134515, at *62, quoting *Jackson v. Sedgwick Claims Man. Servs., Inc.*, 731 F.3d 556, 563-64 (6th Cir. 2013). "Ohio's RICO statute was modeled after the federal statute," and thus mirrors the federal elements. *See Evans v. Shapiro*, 2019-Ohio-3209, ¶ 25 (4th Dist.).

Here, Plaintiff has failed to articulate a short, plain statement as to any of the essential elements of either a federal or state RICO claim as to TQL. Rather, Plaintiff put forth approximately 240 pages worth of various and scattered conclusory allegations with minimal to no connection to TQL. While a court is required to accept factual allegations as true, it is not required to accept legal conclusions with no connection to the factual allegations asserted. *Ledford v. Newmark*, 2015 U.S. Dist. LEXIS 99753, *7 (N.D. Ohio 2015) citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) ("The Court is "not bound to accept as true a legal conclusion couched as a factual allegation'").

Here, Plaintiff makes unsupported allegations regarding an alleged "enterprise," regarding the various defendants and TQL, but fails to provide any allegations detailing the conduct, pattern of activity and racketeering activity in which TQL specifically participated. Additionally, Plaintiff fails to allege any basic facts detailing when, how or where any of the alleged illicit activity of said "enterprise" took place, again because she cannot state such claims. Such factually unsupported, conclusory pleadings are the very types of claims ripe for dismissal pursuant to Civ. R. 12(b)(6). In fact, Ohio courts have dismissed similar RICO complaints as they were a "rambling, vague, and problematic document lacking of any claim that could be considered "short and plain."" *Terry v. DeWine*, 2014 Ohio Misc. LEXIS 17456; see also *Green v. City of Willoughby Hills*, 2025 U.S.

6

Dist. LEXIS 166389, \*5 (N.D. Ohio 2025) (Dismissing civil RICO claims where pleadings did not allege any connection between the enterprise, its predicate RICO actions, interstate commerce, nor did the pleadings imply any such connections). As such, and to the extent Plaintiff is in fact raising a federal or state RICO claim against TQL, it should be dismissed.

### 2. Plaintiff's Has Not Stated a Claim for Declaratory Judgement against TQL.

In conclusory fashion, and without making any connection or explanation as to TQL, Plaintiff asserts this Court should determine various UCC filings levied against her should be declared invalid. Significantly, none of the purported UCC filings are attached to the Amended Complaint, and Plaintiff does not *specifically* allege that TQL was involved in such UCC filings. Plaintiff's conclusory assertions do not put forth a valid basis to assert a claim for seeking a declaratory judgement, let alone one against TQL. As such, Plaintiff's claim should be dismissed.

### 3. Plaintiff Has Not Stated a Claim for Antitrust Violation, either under Federal or State law.

Assuming Plaintiff has purported to allege an antitrust claim against TQL, that claim too fails. Indeed, "[b]ecause nearly every contract that binds parties to an agreed course of conduct 'is a restraint of trade' of some sort, the Supreme Court has limited the restrictions…to bar only 'unreasonable restraints of trade.'" *NHL Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 718 (6th Cir. 2003) citing *Nat'l Collegiate Athletic Ass'n v. Board of Regents of Univ. of Okla.*, 468 U.S. 85, 98, 82 L. Ed. 2d 70, 104 S. Ct. 2948 (1984). Thus, "[i]n order to establish an antitrust claim, [a plaintiff] must prove that [the defendants] (1) participated in an agreement that

7

(2) unreasonably restrained trade in the relevant market." *Id*., citing *Law v. Nat'l Collegiate Athletic Ass'n,* 134 F.3d 1010, 1016 (10th Cir. 1998).[5]

Here, Plaintiff has failed to articulate any short, plain statement regarding any antitrust violation in connection with TQL. Plaintiff has failed to plead even the most basic connection as to how TQL, or any other Defendant for that matter, has engaged in any unreasonable restraint on trade in any relevant market, or how such claims are connected to Plaintiff. The Amended Complaint fails to identify any of TQL's specific actions, let alone explain how those actions are considered unreasonable in the transportation industry, and thus, an unreasonable restraint on trade. Again, Plaintiff has made numerous conclusory allegations, without providing any factual allegations or connections to TQL. As such, Plaintiff's purported antitrust claim as to TQL must be dismissed.

### 4.  Plaintiff Has Not Stated a Claim for Breach of Contract under Ohio Law.

"To properly state a claim for breach of contract, the plaintiff must allege (1) the existence of a binding contract, (2) the nonbreaching party performed his or her contractual obligations, (3) the other party failed to fulfill its contractual obligations without legal excuse, and (4) the nonbreaching party suffered damages as a result of the breach." *Motors, L.L.C. v. Kaba*, 2025-Ohio-640, ¶ 32 (8th Dist.)

TQL does not dispute the existence of a prior contract with Plaintiff. But Plaintiff has not so much as even identified the contractual obligation that it claims TQL breached. Nor does Plaintiff allege that it was proximately damaged by the unidentified breach.  Like the other claims,

---

[5] The Ohio Valentine Act is patterned after the federal Sherman Antitrust Act and the courts have interpreted the statutory language in light of federal construction of the Sherman Act. R.C. 1331.01; *C.K. & J.K., Inc. v. Fairview Shopping Center*, 63 Ohio St.2d 201, 204, 407 N.E.2d 507 (1980).

4924-7032-9226, v. 2

TQL is left to speculate as to what exactly Plaintiff is claiming. As such, Plaintiff's breach of contract claim should be dismissed.

### 5. Plaintiff Has Not Stated a Claim for Tortious Interference under Ohio Law.

To the extent Plaintiff is claiming TQL interfered with a business relationship or contract, that claim too should be dismissed. "The elements of a claim for tortious interference with contract are as follows: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) the lack of justification; and (5) resulting damages." *Bridge v. Park Natl. Bank*, 2003-Ohio-6932, ¶ 6 (10th Dist.). The elements for interference with a business relationship are similar, those being, (1) the existence of a prospective business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. *First-Knox Natl. Bank v. MSD Properties, Ltd.*, 2015-Ohio-4574, 47 N.E.3d 490, ¶ 19 (5th Dist.). Plaintiff has not articulated and cannot articulate either.

Significantly, and like all the claims outlined above, Plaintiff has failed to articulate a claim for tortious interference with a business relationship or contract as to TQL. In the Amended Complaint, Plaintiff appears to claim that by virtue of being in the transportation industry, all Defendants, including TQL, knew of her business dealings and ventures, but fails to allege that TQL was aware of any specific dealing or venture. Moreover, Plaintiff failed to articulate or allege in the Amended Complaint how TQL knew of her business relationships or contracts, and how TQL interfered with her business relationships or contracts. By failing to explain *how* TQL interfered with her relationships or contracts, Plaintiff additionally failed to articulate how TQL's alleged misconduct was improper or not justified.  Simply put, and just like all of her other claims, Plaintiff's claims for tortious interference must be dismissed because they simply put forth

4924-7032-9226, v. 2

conclusory allegations without making any factual connections to TQL. As such, Plaintiff's claim should be dismissed.

## CONCLUSION

Accordingly, Plaintiff's Second Amended Complaint should be struck, and the Amended Complaint should be dismissed.

Respectfully submitted,

/s/ Jonathan M. Scandling
Matthew J. Wiles (0075455)
mwiles@frantzward.com
Jonathan M. Scandling (0093905)
jscandling@frantzward.com
**FRANTZ WARD LLP**
200 Public Square, Suite 3000
Cleveland, Ohio 44114
(216) 515-1660
(216) 515-1650 - Fax

*Attorneys for Defendant TQL*

## CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 7.1, TQL hereby certifies that's its Motion to Dismiss does not exceed the 20-page limit, and that it believes this case will be assigned to the standard track.

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed electronically on January 27, 2026.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  A copy of this filing will be mailed to Plaintiff Sandra Worthing Alves, 25540 Byron Drive, North Olmsted, OH 44070.

/s/ Jonathan M. Scandling
*One of the Attorneys for Defendant TQL*

4924-7032-9226, v. 2