**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SANDRA WORTHING ALVES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:26-cv-00150 |
| | ) | |
| v. | ) | Judge Dan Aaron Polster |
| | ) | |
| INTERNET TRUCKSTOP PAYMENTS | ) | |
| LLC, *et al.*, | ) | |

**DEFENDANT C.H. ROBINSON WORLDWIDE, INC.'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, C.H. Robinson Worldwide, Inc. ("C.H. Robinson") respectfully requests that the Court dismiss Plaintiff Sandra Worthing Alves' ("Plaintiff") First Amended Complaint for failure to state a claim upon which relief can be granted.[1] Plaintiff's First Amended Complaint states that is an action for "Civil RICO; Antitrust; Unfair Competition; Breach of Contract; Declaratory and Equitable Relief." (Amended Compl. p. 11.) But Plaintiff fails to state the elements of those claims against C.H. Robinson.

In fact, the First Amended Complaint is nearly unintelligible, lacking fully numbered counts and numbered paragraphs and meandering an astounding 244 pages (which is a violation

---

[1] On January 14, 2026, Plaintiff filed a Second Amended Complaint, without leave of the Cuyahoga County Court of Common Pleas, as required by Ohio Civil Rule 15(A), which states, "[A] party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." As a result, Plaintiff's First Amended Complaint, filed December 17, 2025, remains the operative pleading. C.H. Robinson has also contemporaneously filed a Motion to Strike the Second Amended Complaint.

of Rule 8(a)(2) of the Federal Rules of Civil Procedure). Despite its length and verbosity, the

First Amended Complaint absolutely fails to state any claim upon which relief may be granted

against C.H. Robinson, in that, of the counts and claims that are enumerated, Plaintiff fails to

state the elements of those claims against C.H. Robinson. As set forth more fully in C.H.

Robinson's Brief in Support of this Motion, attached hereto and incorporated herein, the Court

must dismiss *with prejudice* the First Amended Complaint pursuant to Federal Rule 12(b)(6).

Respectfully submitted,

*/s/ Clare R. Taft*

Eric Larson Zalud (0038959)
Clare R. Taft (0076570)
**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, Ohio 44114-2378
Telephone: (216) 363-4500
Facsimile: (216) 363-4588
Email:
ezalud@beneschlaw.com
ctaft@beneschlaw.com

*Attorneys for Defendant C.H.
Robinson Worldwide, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SANDRA WORTHING ALVES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:26-cv-00150 |
| | ) | |
| v. | ) | Judge Dan Aaron Polster |
| | ) | |
| INTERNET TRUCKSTOP PAYMENTS | ) | |
| LLC, *et al.*, | ) | |

**BRIEF IN SUPPORT OF DEFENDANT C.H. ROBINSON WORLDWIDE, INC.'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## I.  FACTS AND BACKGROUND

On December 10, 2025, Plaintiff Sandra Worthing Alves ("Plaintiff") commenced this action by filing her initial Complaint in the Court of Common Pleas of Cuyahoga County, Ohio. The matter was styled *Sandra Worthing Alvez v. Internet Truckstop Payments LLC, et al.*, Case No. 25 CV 12 9498 (the "State Court Action"). Plaintiff did not name Defendant C.H. Robinson Worldwide, Inc. ("C.H. Robinson") as a defendant in her initial Complaint. (*See* ECF No. 1-1, PageID# 13-16.) The same day that Plaintiff filed her initial Complaint, she also filed a Motion for a Temporary Restraining Order. (ECF No. 1-4, PageID# 81.) That motion was denied *sua sponte* on December 16, 2025.

The next day, December 17, 2025, Plaintiff filed her operative First Amended Complaint, adding C.H. Robinson as a defendant. (ECF No. 1-2, PageID# 44.) On January 14, 2026, Plaintiff improperly filed a Second Amended Complaint, without leave of the Court of Common Pleas, as required by Ohio Civil Rule 15(A). (ECF No. 1-3, PageID# 289.) Two days after filing

her Second Amended Complaint, Plaintiff filed another Motion for a Temporary Restraining Order against the Defendants in the State Court Action, including C.H. Robinson[2]. (ECF No. 1-5, PageID# 818.) On January 20, 2026, the State Court Judge John Russon issued an order *sua sponte* denying this motion as moot. C.H. Robinson then removed this action to this Court on January 20, 2026. (ECF No. 1.)

C.H. Robinson is a federally licensed freight broker. C.H. Robinson arranges the transportation of freight for its customers, but it is not a motor carrier or driver. Plaintiff alleges that she is a motor carrier doing business as "All Directions Trucking, MC#1710778." (*See* ECF No. 1-2, PageID# 73.) In her meandering, nearly indecipherable First Amended Complaint, Plaintiff states that she "brings this civil action to address the coordinated, systemic exploitation of American motor carriers", which is allegedly occurring through "a private, subscription-based digital freight-control regime composed of platforms that are neither carriers nor brokers, yet function as gatekeepers over all interstate commerce." (*Id*.)

When read in the light most favorable to Plaintiff, her First Amended Complaint claims that C.H. Robinson, along with the other Defendants, operated together as an "Enterprise" to manipulate the trucking market, resulting in alleged adverse business and personal outcomes for Plaintiff. (*See generally id.*) Plaintiff's First Amended Complaint enumerates four "counts": (1) Violations of 18 U.S.C. § 1961-68, the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) Declaratory and Equitable Relief pursuant to Ohio Revised Code Section 2721; (3) [stated as Count IV in the First Amended Compl.] Tortious Interference with Business Relationships; (4) [stated as Count V in the First Amended Compl.] Ohio Antitrust/ Restraint of

---

[2] Plaintiff's Second Amended Complaint lists additional defendants not included in the First Amended Complaint. Going forward, C.H. Robinson will refer to "Defendants" in this Motion as any other defendant named in the operative First Amended Complaint.

Trade pursuant to Ohio Revised Code Section 1331.91; along with other claims and allegations not enumerated as individual counts or causes of action. (*See* ECF 1-2.)

Plaintiff claims that C.H. Robinson and other Defendants violated 18 U.S.C. §§1961-68, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), by engaging in racketeering activity and committing wire fraud in violation of 18 U.S.C. §1343 and that Defendants committed extortion by economic fear in violation of 18 U.S.C. §1951 (the "Hobbs Act"). (*See id.* at PageID#s 85-86, 90-97, 123-32, 151-52, 255-56.) Plaintiff further claims that C.H. Robinson and other Defendants committed racketeering activity by engaging in a conspiracy under 18 U.S.C. §1962(d) because "each Defendant knowingly agreed and conspired to conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity." (*See id.* at PageID#s 97-98.)

The First Amended Complaint claims that C.H. Robinson and the Defendants violated 15 U.S.C. §§1-2 (the "Sherman Act") through a concerted Restraint of Trade by "participat[ing] in a concerted refusal to deal by conditioning access to…brokered freight on compliance with uniform third-party platform mandates, aligning with other brokers and platform defendants to exclude non-compliant carriers." (*See id.* at PageID#s 257, 87-88, 257.)

In addition to claiming various violations of federal laws, the First Amended Complaint also purports to list state law claims against C.H. Robinson, including: (1) declaratory judgment (*see id.* throughout); (2) tortious interference with business relationships and contractual relations (*id.* at PageID#s 103-06); (3) violations of Ohio Antitrust law under the Valentine Act, Ohio Revised Code Sections 1331.01-1331.99 (*id.* at PageID#s 103-08, 121, 258-59); (4) Ohio RICO claims under Ohio Revised Code Section 2923.32 (*id.* at PageID#s 85, 91, 276); (5) Ohio Corrupt Activity Act claims under O.R.C. § 2923 (*id.* at PageID#s 120-21); (6) violations of the

Ohio Deceptive Trade Practices Act under Ohio Revised Code Sections 4165.01-4165.04 (*id.* at PageID#s 259-60); and (7) Ohio common law unfair competition (*id.* at PageID#s 260-61).

The First Amended Complaint seeks compensatory damages in the amount of $80,000, not including interest and costs, for alleged "lost loads and revenue, wrongfully delayed," among other specific harm, costs and fees for filing and appointment of Special Masters, interest, punitive damages, and treble damages under Ohio Revised Code Section 2923.34(E), 18 U.S.C. §1964(c) (RICO), and 15 U.S.C. §15 (Sherman Act). (*See*ECF 1-2, PageID#s 53, 275-79. at pp. 9, 231-35). Plaintiff further seeks: (a) a declaratory judgment that Defendants' conduct was unlawful; (b) injunctive and equitable relief in the form of a Temporary Restraining Order; (c) an injunction preventing Defendants from engaging in alleged wrongdoing; and (d) disgorgement and restitution, seeking profits Defendants allegedly unlawfully obtained from their alleged prohibited conduct. (*See id.* at PageID#s 275-79.)

However, as detailed below, Plaintiff fails to state any cognizable claim against C.H. Robinson. Although Plaintiff continues on and on over 244 pages with reiterations, vague allegations, and lists of state and federal laws, Plaintiff utterly fails to state any claims against C.H. Robinson. The First Amended Complaint warrants dismissal with prejudice.

## II.     LAW AND ARGUMENT

### A.     Standard Of Review

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, "a pleading that states a claim for relief must contain," among other things, "a *short and plain* statement of the claim showing that the pleader is entitled to relief." The 244-page First Amended Complaint is *not short and plain*. *Bennett v. Lopez*, No. 2:25 cv 3033, 2025 WL 3209158, at *3 (E.D. Cal. Nov. 17, 2025) (citing Fed. R. Civ. P. 8(a) (finding plaintiff's 65-page single-spaced complaint is not short and plain.)) The *Bennett* court found, "[p]laintiff includes repetitive facts, case

4

citations, refers to his own prior filings in this court, criminal cases, discusses exhaustion of remedies, among other things. The inclusion of such extraneous information in the complaint unduly lengthens and confuses the pleading, and his allegations are indecipherable. The Court is unable to ascertain the allegations and the specific claims plaintiff intends to pursue. As a result, the complaint is not short and plain, in violation of Rule 8(a)(2). Therefore, the complaint must be dismissed." *Id*. (citing *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047 (9th Cir. 2011) (complaints are subject to dismissal if they are "needlessly long," "highly repetitious, confusing, or consist of incomprehensible rambling"). "The failure to comply with Rule 8 is a basis for dismissal that is not dependent on whether the complaint is without merit." *Id.* (citing *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) (affirming dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant")). "Even claims which are not on their face subject to dismissal under Rule 12(b)(6) may still be dismissed for violating Rule 8(a)." *Id.* (citing *McHenry*, 84 F.3d at 1177, 1179). Furthermore, *Plaintiff's pro se status does not relieve her of conformity to the pleading rules*. *Id.*

"Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly." *Id.* (citing *Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). "Plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support plaintiff's claim." *Id.* Failure to comply with the requirements of Fed. R. Civ. P. 8(a)(2), requires the Court to dismiss the First Amended Complaint. *See id*.

Similarly, Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. On a Rule 12(b)(6) motion, the court accepts as true the "well-pleaded factual allegations" in the complaint and

construes them in the light most favorable to the plaintiff. *Kerchen v. Univ. of Michigan*, 100 F.4th 751, 760 (6th Cir. 2024). However, the court need not accept legal conclusions or create a cause of action for a plaintiff where none exists on the face of the pleading. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft* , 556 U.S. at 678 (internal citations omitted). Establishing the plausibility of a complaint's allegations is a two-step process. *See id.* at 679. First, a court should "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Then, a court should "assume the[ ] veracity" of "well pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 664. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678.

Furthermore, the Court must dismiss the First Amended Complaint *with prejudice*. "Although federal courts are inclined to grant leave to amend following a dismissal order, there are circumstances where amendment will not be allowed." *Sinay v. Lamson & Sessions Co*., 948 F.2d 1037, 1040 (6th Cir. 1991). "One such obvious circumstance is where the amended complaint could not withstand a Rule 12(b)(6) motion." *In re Royal Appliance Securities Litigation*, 64 F.3d 633, 1995 WL 490131, at *5 (6th Cir. 1995) (quoting *Sinay*, 948 F.2d at 1041). Here, Plaintiff filed a Complaint, the First Amended Complaint, and the improperly filed Second Amended Complaint. *None* of these pleadings meet the Federal Rules' pleading standards. A quick review of the Second Amended Complaint demonstrates it is not substantively different from the First Amended Complaint and would not correct any of the

pleading deficiencies of the First Amended Complaint. Dismissal with prejudice on a Rule 12(b)(6) motion is appropriate where "the district court found that plaintiffs' proposed amended complaint was not substantively different, and, hence, could not withstand a motion to dismiss." *Id.* Plaintiff cannot be permitted to amend and dismissal with prejudice is warranted.[3]

The First Amended Complaint does not state any plausible claim for relief against C.H. Robinson. Essentially, Plaintiff alleges that C.H. Robinson should be held liable for her alleged damages because C.H. Robinson is a large transportation broker. Plaintiff does not allege—*not once*—that she has ever even done business with C.H. Robinson. (*See* ECF 1-2.) Plaintiff admits that she "is not enrolled as a carrier within C.H. Robinson's proprietary carrier network…" (*Id.* at PageID# 252.) Rather, Plaintiff states, "[b]ecause of its size, C.H. Robinson does not need to explicitly collude; its practices become the benchmark that smaller brokers follow to remain 'competitive.'" (*Id.* at PageID# 134.) Without any supporting facts, Plaintiff broadly contends that, "[w]hen C.H. Robinson says 'this is the rate,' the market adjusts downward." (*Id.* at PageID# 134.) Plaintiff does not allege that C.H. Robinson did anything to Plaintiff or in any way specifically harmed Plaintiff's business or caused Plaintiff damages. (*See id.*) As a result, Plaintiff's claims against C.H. Robinson cannot stand.

**B.      The Court Must Dismiss the Amended Complaint Against C.H. Robinson for Failure to State a Claim Upon Which Relief May be Granted.**

***1.      Plaintiff Fails to State a RICO Claim Pursuant to 18 U.S.C. § 1962(c).***

"To establish a violation of 1962(c), a plaintiff must allege: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Georgia*, 768 F. App'x 446, 453 (6th Cir. 2019) (quoting *Sedima, S.P.R.L. v.*

---

[3] If Plaintiff is permitted to file the Second Amended Complaint, which C.H. Robinson moved to strike, C.H. Robinson will move to dismiss on these same grounds. The Second Amended Complaint does not correct *any* pleading deficiencies.

*Imrex Co.*, 473 U.S. 479, 496 (1985)). Plaintiff's First Amended Complaint does not establish any of those elements.

**_No Conduct._** In the RICO context, "'[c]onduct' refers to a defendant's conduct or participation in the alleged enterprise's affairs.'" *HMV Props., LLC v. IDC Ohio Mgmt., LLC,* No. 2:08-CV-895, 2011 WL 53166 at *5 (S.D. Ohio Jan. 6, 2011) (internal citations omitted). To sufficiently plead "conduct," the plaintiff must meet the "operation or management test" by showing some participation by the defendant in the operation or management of the alleged enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 176, 179 (1993). But here, Plaintiff's First Amended Complaint is devoid of any well-pleaded facts showing that C.H. Robinson operated, managed, or even participated in the alleged conspiracy. At most, Plaintiff's First Amended Complaint alleges only that "smaller brokers" choose to "follow" C.H. Robinson's unidentified business "practices." (ECF 1-2 at PageID# 252.) That does not come close to demonstrating that C.H. Robinson operated, managed or made any decisions in the alleged enterprise.

**_No Enterprise._** RICO's definition of "enterprise" includes "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise requires "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Where a complaint,

> … essentially lists a string of entities allegedly comprising the enterprise, and then lists a string of supposed racketeering activities in which the enterprise purportedly engages, [there is no enterprise]. Although the plaintiff may allege the separate elements of "enterprise" and "pattern of racketeering activity" through the same facts, **_the complaint must contain facts suggesting that the behavior of the listed entities is "coordinated" in such a way that they function as a "continuing unit."_** This complaint is entirely devoid of any such factual allegations. Accordingly, plaintiffs have

> failed to state a RICO claim, and the district court properly dismissed this claim under Fed.R.Civ.P. 12(b)(6).

*Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781-82 (6th Cir. 2000) (emphasis added) (internal citations omitted).

Plaintiff's First Amended Complaint does exactly what the *Begala* court prohibits. It merely lists a string of supposed racketeering activity without pleading specific facts demonstrating coordination amongst the Defendants. In doing so, the First Amended Complaint fails to meet the standard set in *Begala*, to "contain facts suggesting that the behavior of the listed entities is 'coordinated' in such a way that they function as a 'continuing unit.'" *Id.* Plaintiff makes no allegations of a coordinated, continuing unit amongst the Defendants, including C.H. Robinson. Moreover, it is improper for a RICO plaintiff to blend "the identities of the defendants" and expect a court to infer one defendant's "complicity into an allegation that specifically names" another defendant. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1217 (11th Cir. 2020); *see Nice v. City of Akron*, No. 5:21-CV-1887, 2023 WL 1768314, at *9 (N.D. Ohio Feb. 3, 2023) (holding that "'lumping' defendants does not suffice to support a RICO complaint").

***No Pattern of Racketeering Activity.*** To establish a pattern of racketeering activity, Plaintiff must allege facts showing that C.H. Robinson committed at least two predicate offenses. 18 U.S.C. § 1961(5). The two predicate acts by C.H. Robinson alleged in Plaintiff's First Amended Complaint are wire fraud (18 U.S.C. § 1961(1)(B)) and extortion (18 U.S.C. § 1961(1)(A)).[4] However, Plaintiff has failed to plead facts sufficient to establish either one. *Marinac v. Todd, No*. 1:20-CV-1571, 2022 WL 3904049, at *14 (N.D. Ohio Aug. 30, 2022).

---

[4] Plaintiff also claims that there was "Coercive Surveillance, Reputation Control, and Retaliation" by some Defendants, but not by C.H. Robinson. (ECF 1-2, PageID#s 96-97.)

28173562 v1

"Like any allegation of fraud, [the] alleged predicate acts must satisfy the heightened pleading standards embodied in Federal Rule of Civil Procedure 9(b), which requires the plaintiff to 'state with particularity the circumstances constituting fraud.'" *Cisneros*, 972 F.3d at 1217 (citing *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010)); *see Nice*, 2023 WL 1768314, at *9 (dismissing RICO claims because referring to a group of defendants as "Defendants," "they," or "them" without assigning specific acts to each defendant did not meet the heightened pleading standard). Thus, to survive a motion to dismiss, Plaintiff must plead "'(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff[ ]; and (4) what the defendants gained by the alleged fraud.'" *Cisneros*, 972 F.3d at 1217 (citing *Am. Dental*, 605 F.3d at 1291). As the *Cisneros* court states, "[u]nder Rule 9(b), we will not scour the allegations of a complaint to link unnamed defendants to particular acts of fraud without some reasoned and plausible way to do so." *Id.*

In 244 pages of the First Amended Complaint, Plaintiff does not even allege that she did business with C.H. Robinson, much less that C.H. Robinson made particular fraudulent statements, documents, or misrepresentations to Plaintiff, the time and place of such misrepresentations, how she was misled or what, if anything, C.H. Robinson may have gained through the alleged misrepresentations. Furthermore, while Plaintiff claims "extortion" by C.H. Robinson and other Defendants through allegedly withheld earned freight payments, Plaintiff also freely admits that she "is not enrolled as a carrier within C.H. Robinson's proprietary carrier network…" (ECF 1-2, PageID#s 96, 252.) C.H. Robsinson, *by Plaintiff's own admission*, could not withhold payments to Plaintiff when Plaintiff *never* did any work for C.H. Robinson.

10

Plaintiff must also plead "'a relationship between the predicates and the threat of continuing activity. It is this factor of *continuity plus relationship* which combines to produce pattern.'" *Bachi-Refitt v. Reffitt*, 802 F. App'x 913, 918 (6th Cir. 2020) (emphasis in original; quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 724 (6th Cir. 2006)). "Continuity and relationship constitute two analytically distinct prongs of the pattern requirement." *Vild v. Visconsi,* 956 F.2d 560, 566 (6th Cir. 1992). Continuity "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co*., 492 U.S. 229, 241 (1989). Courts find that a few months is insufficient to establish the continuity requirement. *Vild*, 956 F.2d at 569. Further, where "[t]here is no allegation that defendants continued to threaten and defraud [plaintiff] and defrauded others in similar [fashion]…'the acts alleged amount at best to a [single incident] with a single customer'"—not a continuing pattern of racketeering activity. *Id.* (internal citations omitted). The First Amended Complaint neither alleges a timeframe in which the alleged acts occurred nor alleges with sufficient particularity that C.H. Robinson defrauded plaintiff in any particular way.

The First Amended Complaint also fails to establish the predicate offenses of wire fraud and extortion. Establishing wire fraud pursuant to 18 U.S.C. § 1343, requires a complaint to allege with particularity: "(1) a scheme or artifice to defraud; (2) use of the mails or interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *Marinac v. Todd*, No. 1:20-CV-1571, 2022 WL 3904049, at *11 (N.D. Ohio Aug. 30, 2022) (finding plaintiff did not sufficiently plead wire fraud in her complaint under the racketeering requirement).

"A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *Id.* (citing *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005)). Not only must a defendant "knowingly make a material misrepresentation or knowingly omit a material fact, but also that the misrepresentation or omission must have the purpose of inducing the victim of the fraud to part with property or undertake some action that he would not otherwise do absent the misrepresentation or omission." *Id.* (citing *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998)). "And the plaintiff must establish that the defendant acted with either a specific intent to defraud or with recklessness with respect to the potentially misleading information." *Id.*

With respect to the allegedly fraudulent representations themselves, the plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Marinac*, 2022 WL 3904049, at *11 (citing *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998)). The *Marinac* court found that statements which "generally refer to 'Defendants' collectively and fail to identify a single allegedly fraudulent communication or describe an allegedly fraudulent communication with the degree of particularity required" fail to establish wire fraud. *Id.* The court also found that, for each alleged fraudulent communication, plaintiff must allege the "who, where, when and why," without which the plaintiff fails to sufficiently allege wire fraud. *Id.* The First Amended Complaint is riddled with general allegations against all Defendants and does not contain any factual allegations demonstrating the who, where, when, and why of the alleged wire fraud. The First Amended Complaint is, therefore, legally deficient.

Aside from wire fraud, the other predicate act alleged by Plaintiff to support her RICO claim is extortion, citing the Hobbs Act. The elements of economic extortion pursuant to the Hobbs Act, 18 U.S.C. § 1951, are: (1) "the obtaining of property from another, (2) with his consent, (3) induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 383 (6th Cir. 2012). Property under the Hobbs Act must be "transferable – that is, capable of passing from one person to another." *Sekhar v. United States*, 570 U.S. 729, 734 (2013). The defendant must pursue "something of value" from the victim that can be exercised, transferred, or sold. *Id.*

Here, the First Amended Complaint does not contain any facts establishing that C.H. Robinson "obtained" any transferable "property" from Plaintiff through the use of any "force, violence, or fear" *or otherwise*. There is simply nothing in the First Amended Complaint to suggest that C.H. Robinson took anything of value whatsoever from Plaintiff. She, therefore, has not shown any extortion as a predicate act to support her Section 1962(c) claim.

**_No Concrete Injury Sufficient to Confer Standing._** Plaintiff has also failed to properly plead a concrete injury sufficient to establish standing to bring a RICO claim in the first place. "RICO confers a cause of action only when the injury to business or property suffered by a plaintiff is caused by the conduct constituting the RICO violation." *Heinold v. Perlstein*, 651 F. Supp. 1410, 1412 (E.D. Pa. 1987) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285–86 (1985)). "Where, as here, the only property to which a plaintiff alleges injury is an expectation interest that would not have existed but for the alleged RICO violation, it would defy logic to conclude that the requisite causation exists." *Id*. For all of those reasons, Plaintiff's RICO claim under Section 1962(c) must be dismissed with prejudice.

### 2.      *Plaintiff Fails to State a RICO Claim Pursuant to 18 U.S.C. § 1962(d).*

Plaintiff alleges that C.H. Robinson violated RICO Section 1962(d). Under Section 1962(d), it is "unlawful" for any person to "conspire to violate" RICO. 18 U.S.C. § 1962(d). However, in order to state a claim for conspiracy to violate RICO under Section 1962(d), the plaintiff must first establish an underlying RICO claim. Where, as here, the Plaintiff's Section 1962(c) claim is deficient, the tagalong Section 1962(d) claim necessarily fails. *Aces High Coal Sales, Inc. v. Cmty. Bank & Trust*, 768 F. App'x 446, 459 (6th Cir. 2019) (finding that, without meeting a 1962(c) claim, the plaintiff cannot establish a 1962(d) claim).

Section 1962(d) requires "the existence of an illicit agreement to violate the substantive RICO provision." *Id.* The First Amended Complaint does not describe with specificity an "agreement" amongst the Defendants to violate RICO. At most, Plaintiff baldly claims that "C.H. Robinson knowingly agreed and conspired with other Enterprise members—brokers and platform operators—to implement uniform technological mandates." (ECF No. 1-2, PageID# 256.) Stating that there was an agreed-upon conspiracy, without supporting facts, does not state a claim upon which relief may be granted. Plaintiff's Section 1962(d) claim fails too.

### 3.      *Plaintiff Fails to State a Claim under the Sherman Act, 15 U.S.C. § 1.*

Plaintiff also sued C.H. Robinson for allegedly violating Section 1 of the Sherman Act, which requires proof of: (1) a contract, combination, or conspiracy; (2) affecting interstate commerce; (3) which imposes an "'unreasonable' restraint of trade." *White & White, Inc. v. Am. Hosp. Supply Corp.*, 723 F.2d 495, 504 (6th Cir. 1983). Plaintiff has not done so.

The First Amended Complaint does not establish any "contract, combination, or conspiracy" between C.H. Robinson and any of the other Defendants. A "conspiracy" is more than parallel business interests or actions; parallel business behavior does not alone establish an agreement amongst the defendants or "itself constitute a Sherman Act offense." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 553 (2007). Indeed, "parallel conduct or interdependence, without more," does not establish a conspiracy or agreement because it is "in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Id.* at 554. At most, Plaintiff's First Amended Complaint alleges that the Defendants are engaging in parallel conduct because "smaller brokers" allegedly "follow" C.H. Robinson's business "practices." (ECF 1-2 at PageID# 252.) Alone, that is not sufficient evidence of an agreement or conspiracy to restrain trade.

To support her Sherman Act claim, Plaintiff must further allege that C.H. Robinson unreasonably restrained trade through either: (1) a *per se* analysis applied when the alleged conspiracy is horizontal, or (2) a rule of reason analysis applied when the alleged conspiracy is vertical. *Care Heating & Cooling, Inc. v. Am. Standard, Inc.*, 427 F.3d 1008, 1012-15 (6th Cir. 2005). In her First Amended Complaint, Plaintiff does not discuss which theory of recovery she seeks against C.H. Robinson. Regardless, she does not meet the standard for either.

"Horizontal conspiracies involve agreements among competitors at the same level of market structure to stifle trade, such as agreements among manufacturers or among distributors to fix prices for a given product, and therefore may constitute *per se* violations of antitrust law." *Id.* at 1013.[5] Plaintiff has not pled any such "agreement among competitors," as detailed above.

"Vertical conspiracies, on the other hand, involve agreements among actors at different levels of market structure to restrain trade, 'such as agreements between a manufacturer and its distributors to exclude another distributor from a given product and geographic market.'" *Id.* (internal citations omitted). "Rule of reason analysis requires the plaintiff to prove (1) that the

---

[5] In *Care Heating*, the plaintiff alleged that a horizontal restraint existed because the defendants refused to add plaintiff to a list of approved contractors. 427 F.3d at 1013. The court rejected plaintiff's horizontal argument and determined that defendants' conduct was "per se legal because 'a manufacturer has a right to select its customers

15

defendant(s) contracted, combined, or conspired; (2) that such contract produced adverse anticompetitive effects; (3) within relevant product and geographic markets; (4) that the objects of and conduct resulting from the contract were illegal; and (5) that the contract was a proximate cause of plaintiff's injury." *Id.* at 1014. In *Care Heating*, the court found that the plaintiff failed to allege sufficient facts in its complaint to plead prongs two, four, and five of the rule of reason analysis, determining that "alleging only adverse effects suffered by an individual competitor cannot establish an antitrust injury." *Id.* at 1015. Likewise, Plaintiff makes no reference to an alleged harm suffered to similarly situated people and fails to otherwise plead a vertical conspiracy. Her claim under Section 1 of the Sherman Act must be dismissed.

### 4.  *Plaintiff Fails to State a Claim Pursuant to Sherman Act, 15 U.S.C. § 2.*

Plaintiff asserts a claim under Section 2 of the Sherman Act, 15 U.S.C. § 2, which provides for two types of actions: monopolization and attempted monopolization. As with most of the First Amended Complaint, it is unclear which, if any, Sherman Act claim Plaintiff is allegeing C.H. Robinson. However, *assuming arguendo*, Plaintiff alleges violations of Section 2 of the Sherman Act by C.H. Robinson, Plaintiff has not sufficiently plead those claims.

Monopolization requires proof of: "(1) the possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 571-72 (1966). "Monopoly power" is defined as "the power to control prices or exclude competition." *Id.* (finding that a monopoly requires a "predominant share" in the relevant market and defining the market itself). Here, Plaintiff's pleading does not even sufficiently define the market, let alone plead facts explaining

---

and refuse to sell its goods to anyone for reasons sufficient to itself." *Id.* Accordingly, plaintiff was "required to establish the unreasonableness of the alleged restraint" and could not do so. *Id.* (internal citations omitted).

how C.H. Robinson—a licensed broker that is *not* a shipper or a motor carrier—willfully holds "monopoly power" over that market. If anything, Plaintiff's First Amended Complaint alleges that monopolization is itself a *standard practice* of interstate commerce, such that any actions allegedly taken by C.H. Robinson would be a consequence of routine business. (*See* ECF #1-2.)

To prove "attempted monopolization," Plaintiff must demonstrate: "(1) the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). "Anticompetitive conduct is any conduct that 'attempts to exclude rivals on some basis other than efficiency.'" *Dodge Data & Analytics LLC v. iSqFt, Inc.*, 183 F. Supp. 3d 855, 865 (S.D. Ohio 2016) (citations omitted). "Courts have held…that 'the mere intention to exclude competition and to expand one's own business is not sufficient to show a specific intent to monopolize' because [a]ll lawful competition aims to defeat and drive out competitors.'" *Re/Max Int'l v. Realty One, Inc.*, 900 F. Supp. 132, 154 (N.D. Ohio 1995), *aff'd sub nom. Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995 (6th Cir. 1999) (citing *Great Escape, Inc. v. Union City Body Co.*, 791 F.2d 532, 541 (7th Cir. 1986)). In analyzing the probability of achieving monopoly, courts "require[] inquiry into the relevant product and geographic market and the defendant's economic power in that market." *Spectrum*, 506 U.S. at 459.

Again, C.H. Robinson's size in the transportation industry appears to be Plaintiff's primary concern. Plaintiff does not specify where the geographic market is and how much alleged control C.H. Robinson holds over the industry. (*See* ECF 1-2.) Moreso, Plaintiff does not allege an intent to monopolize, rather than merely an intent to "expand one's own business." As such, Plaintiff cannot survive a motion to dismiss on her claim under the Sherman Act.

### 5.    *Plaintiff Fails to State a Claim for Tortious Interference.*

28173562 v1

The elements of tortious interference with business and contractual relationships are: "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F. Supp. 2d 942, 949 (S.D. Ohio 2003) (quoting *Barilla v. Patella*, 760 N.E.2d 898, 904 (Ohio Ct. App. 2001)). "Under Ohio law, a cause of action for [tortious interference with business relations] is made out when ... one who, without a privilege to do so, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another ...." *Equity Res., Inc. v. Thoman,* 682 F. Supp. 3d 707, 717 (S.D. Ohio 2023).

"Ohio does not recognize the tort of wrongful interference with a business expectancy that is separate from tortious interference with a business relationship." *Coventry Grp., Inc. v. Gottlieb*, 2014-Ohio-213, ¶ 13 (8th Dist.). The tort of tortious interference with a business expectancy does not include tortious interference with the collection of a payment. *Id.*

Plaintiff's pleading does not allege facts showing that C.H. Robinson had knowledge of any *specific* "business relationship" of Plaintiff or that C.H. Robinson intentionally caused "a breach or termination of [that] relationship." Instead, Plaintiff broadly contends that C.H. Robinson and the other Defendants somehow interfered with "delayed or withheld payments, loss of business opportunities, disruption of existing relationships, impairment of cash flow and credit, and consequential financial harm." (ECF 2-1, PageID# 105.) The First Amended Complaint states: "Plaintiff maintained existing and prospective business relationships and contractual relationships with freight brokers, shippers, and payment counterparties in connection with the lawful transportation of goods in interstate commerce. These relationships included the ***reasonable expectation of payment for completed transportation services and***

*continued participation in broker-carrier transactions absent lawful cause for exclusion*." (*Id.*) (Emphasis added.) As stated above, seeking recovery for collection of due payments is not a business *expectancy*, and alleged interference with collection of payments is not tortious interference. Thus, Plaintiff fails to state a claim for tortious interference.

### 6. *Plaintiff Fails to State a Claim Pursuant to Ohio RICO Statutes.*

In addition to her federal RICO claim, Plaintiff also purports to state a claim under Ohio's RICO statutory scheme. Ohio Revised Code Section 2923 *et seq.* Ohio's RICO law is similar to federal RICO law, but does have some differences.[6] In light of the confusing and rambling allegations in the First Amended Complaint, it is unclear whether Plaintiff pleads allegations under Ohio-specific racketeering acts or federal racketeering acts, as Plaintiff often lists both statutory schemes in conjunction and without support. (*See* ECF No. 1-2.) Plaintiff also claims that she is entitled to damages pursuant to Ohio Revised Code Section 2923.34(E). (*Id.* at PageID# 276.) However, "[t]he Ohio Corrupt Activities Act, Ohio's RICO statute, is directly adopted from the federal RICO statute, and the same analysis applies to it as the federal statute." *Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 985 (N.D. Ohio 2008). As set forth above, Plaintiff cannot and has not stated *any* claim for any RICO violations—*state or federal*.

### 7. *Plaintiff Fails to State a Claim Pursuant to the Ohio Valentine Act.*

The Ohio Valentine Act, Ohio Revised Code Sections 1331.01-1331, was patterned after the Sherman Antitrust Act. As a consequence, courts interpret the statutory language of the Ohio Valentine Act consistent with federal judicial construction of the Sherman Act. *C. K. & J. K., Inc. v. Fairview Shopping Ctr. Corp.*, 63 Ohio St. 2d 201, 204 (1980). A "plaintiff's failure to

---

[6] For example, (1) Ohio's law does not require an interstate commerce requirement; (2) Ohio's law permits recovery from direct and indirect injury, while the federal statute does not permit indirect purchasers to recover (O.R.C. § 2923.34(E)); and (3) Ohio's law includes various Ohio claims that constitute racketeering in addition to federal laws (O.R.C. § 2923.31(I)(2)).

28173562 v1

prove its claims under the Sherman Act constitutes in this case a failure to prove the claim under Ohio Rev.Code § 1331.01." *Richter Concrete Corp. v. Hilltop Basic Res., Inc.,* 547 F. Supp. 893, 920 (S.D. Ohio 1981), *aff'd sub nom. Richter Concrete Corp. v. Hilltop Concrete Corp.,* 691 F.2d 818 (6th Cir. 1982). As set forth above, Plaintiff has not stated a claim under the Sherman Act, and thus cannot and has not stated a claim under the Ohio Valentine Act, as there are no antitrust violations by C.H. Robinson pled in the First Amended Complaint.[7]

Furthermore, "[b]ecause protecting competition is the *sine qua non* of the antitrust laws, a complaint alleging only adverse effects suffered by an individual competitor cannot establish an antitrust injury." *Care Heating & Cooling, Inc. v. Am. Standard, Inc*., 427 F.3d 1008, 1014-15 (6th Cir. 2005). While a plaintiff may personally have been injured, her claim does not fall under the Valentine Act unless the loss stems from a competition-reducing aspect or effect of the defendants' behavior. Otherwise, it is not an antitrust injury. *Schweizer v. Riverside Methodist Hosps.*, 108 Ohio App. 3d 539, 544 (10th Dist. 1996). Here, Plaintiff only makes vague and conclusory statements as to *her* alleged injuries. Plaintiff wholly fails to state a claim against C.H. Robinson for antitrust violations—at the state or federal level.

### 8. *Plaintiff Fails to State a Claim Pursuant to the Ohio Deceptive Trade Practices Act.*

The First Amended Complaint alleges that C.H. Robinson "engaged in deceptive trade practices in violation of Ohio Rev. Code § 4165.02…" (ECF 2-1, PageID# 260.) Ohio Revised Code Section 4165.02 is essentially a prohibition on false advertising, and it requires Plaintiff to

---

[7] Additionally, while Plaintiff cites to the entire chapter of Section 1331, not all statutes cited could even apply to the stated allegations of the First Amended Complaint. *See* O.R.C. § 1331.15 (prohibiting discriminatory prices of milk and cream to prevent a dairy monopoly); O.R.C. § 1331.021 (targeting monopolies in the petroleum industry); O.R.C. § 1331.09 (detailing evidentiary standards for criminal proceedings); O.R.C. § 1331.10, O.R.C. § 1331.13, and O.R.C. § 1331.99 (enumerating specific rules for criminal prosecutions); O.R.C. 1331.11 and O.R.C. 1331.12 (outlining procedures a court may follow); O.R.C. § 1331.14 (declaring sections §§ 1331.01-1331.13 to be cumulative); O.R.C. § 1331.16, and O.R.C. § 1331.17 (enumerating specific rules for the attorney general).

allege any one of thirteen enumerated deceptive practices. Plaintiff obviously misunderstands the basis of the statute, as Plaintiff claims that C.H. Robinson violated Section 4165.02 by "[r]epresenting that invasive surveillance, continuous tracking, and ELD interfacing were 'industry standard' or unavoidable, when such practices are not mandated by law; [f]ailing to disclose the scope, duration, and downstream use of carrier and driver data; [and] [c]reating the false impression that refusal to submit to third-party platforms would be non-viable for any carrier seeking freight." (*Id.*) Those allegations do not pertain to false advertising, and Plaintiff's pleading does not otherwise allege any deceptive trade practices contemplated by the statute.

### 9.    *Plaintiff Fails to State a Claim for Injunctive Relief.*

"In deciding whether to grant a preliminary injunction, a court must look at: (1) whether there is a substantial likelihood that plaintiff will prevail on the merits, (2) whether plaintiff will suffer irreparable injury if the injunction is not granted, (3) whether third parties will be unjustifiably harmed if the injunction is granted, and (4) whether the public interest will be served by the injunction." *Hydrofarm, Inc. v. Orendorff*, 2008-Ohio-6819, ¶ 18 (10th Dist.) (citations omitted). A plaintiff must prove injunctive relief by clear and convincing evidence. *Id.* at 344. The First Amended Complaint states that Plaintiff seeks some sort of amorphous injunctive relief—not tying the alleged necessary relief to any specific claims. But what is more, at no point in the First Amended Complaint does Plaintiff address how the public interest will be served by injunctive relief and whether third parties will be unjustifiably harmed if relief is not granted. (*See* ECF No. 1-2.) Because Plaintiff fails to plead those required elements, the Court must dismiss all claims related to injunctive relief. *See Hydrofarm, Inc.,* 2008-Ohio-6819 (ruling in favor of the defendant because plaintiff failed to demonstrate it would suffer irreparable harm without the injunction).

---

28173562 v1

### 10.     *Plaintiff Fails to State a Claim for Declaratory Judgment*

A party must have standing to assert a claim for declaratory relief. *Logan v. Champaign Cnty. Bd. of Elections,* 2023-Ohio-4688, ¶ 28. "An injury is required for common law standing, and the lack of standing precludes any consideration of a justiciable issue." *Id.* (citations omitted). A motion to dismiss is a proper mechanism to dismiss a declaratory judgment claim. *Wilkins v. Harrisburg*, 2015-Ohio-5472, ¶ 38 (10th Dist.) ("A motion to dismiss for lack of standing is properly brought pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted."); *see also M6 Motors, Inc. v. Nissan of N. Olmsted, LLC,* 2014-Ohio-2537, ¶ 19 (8th Dist.) ("A trial court may dismiss a complaint for declaratory judgment without addressing the merits of the case if there is (1) neither a justiciable issue nor an actual controversy between the parties requiring speedy relief, or (2) the declaratory judgment will not terminate the uncertainty or controversy."). "[T]he three prerequisites to declaratory relief are (1) a real controversy between the parties, (2) justiciability, and (3) the necessity of speedy relief to preserve the parties' rights." *ProgressOhio.org, Inc. v. JobsOhio*, 2014-Ohio-2382, ¶ 19. Here, Plaintiff fails to plead that declaratory judgment will terminate the alleged uncertainty or controversy. Plaintiff has not provided how declaratory relief (seeking declaration that the Defendant's acts are illegal) will provide certainty with how the parties should proceed in the future. (*See* ECF No. 1-2.) Furthermore, Plaintiff's request for declaratory relief is duplicative of her other claims and must be dismissed on this basis as well. *Miami Valley Mobile Health Services, Inc. v. ExamOne Worldwide, Inc.,* 852 F.Supp.2d 925, 939 (S.D. Ohio 2012) (citing *Florists' Transworld Delivery, Inc. v. Fleurop–Interflora,* 261 F.Supp.2d 837 (E.D.Mich.2003) (dismissing declaratory judgment claim because relief sought was redundant in light of relief sought for breach of contract).

## III.     CONCLUSION

Based on the reasons and authorities cited herein, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, C.H. Robinson Worldwide, Inc. respectfully requests that the Court dismiss *with prejudice* Plaintiff Sandra Worthing Alves' First Amended Complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

**OF COUNSEL:**

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

*/s/ Clare R. Taft*
ERIC LARSON ZALUD (0038959)
CLARE R. TAFT (0076570)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, Ohio  44114
Telephone:  (216) 363-4500
Facsimile:  (216) 363-4588
Email:  ezalud@beneschlaw.com
            ctaft@beneschlaw.com

*Attorneys for Defendant C.H. Robinson Worldwide, Inc.*

28173562 v1

## **CERTIFICATE OF SERVICE**

This is to certify that the foregoing was filed electronically on the 27th day of January 2026 in accordance with the Court's Electronic Filing Guidelines.  Notice of this filing will be sent to all parties by operation of the Court's Electronic Filing System.  Parties may access this filing through the Court's Filing System.

*/s/ Clare R. Taft*
CLARE R. TAFT (0076570)