# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

SANDRA WORTHING ALVES,

        Plaintiff,

        v.

INTERNET TRUCKSTOP PAYMENTS,
LLC, *et al.*,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

**CASE NO: 1:26-cv-0150**

**Judge Dan Aaron Polster**

**ORDER & OPINION**

     Before the Court are various motions to dismiss pursuant to Federal Rule of Civil Procedure 12 (collectively, "Dismissal Motions") filed Highway App, Inc. ("Highway"); C.H. Robinson Worldwide, Inc. ("C.H. Robinson"); Total Quality Logistics, LLC ("TQL"); Magellan Transport Logistics, Inc. ("Magellan"); Internet Truckstop Payments, LLC ("Internet Truckstop"); Motive Technologies, Inc. ("Motive"); GenLogs, Inc. ("GenLogs"); and Carrier411 Services, Inc. ("Carrier441") (collectively, "Defendants"). *See* ECF 43-49, 57, 59, 66. All but two of the Defendants filed by March 31, 2026, in accordance with this Court's order, Order [non-document], *Alves v. Internet Truckstop Payments, LLC, et al..*, Case No. 1:26-cv-0150 (N.D. Ohio Mar. 17, 2026); GenLogs filed its motion on April 23, 2026, with leave of the Court, ECF 51,[1] and Carrier411 filed its motion on May 7, 2026, in accordance with Federal Rules of Civil Procedure 12(a)(1)(A)(i) and 12(b) after it was served on April 16, 2026, ECF 66. Plaintiff Sandra Worthing Alves filed a consolidated response on April 9, 2026, and an additional supplement on April 27,

---

[1] GenLogs initially filed its motion on April 21, 2026. ECF 56. However, that filing inadvertently contained privileged attorney work product, and GenLogs moved to strike and refile without the work product information on April 22, 2026. ECF 58. The Court granted the motion to strike and refile on April 23, 2026, which GenLogs promptly did that same day. ECF 59. With this background in mind, the Court considers GenLogs' motions to be timely.

2026, following GenLogs' filing (collectively, "Opposition"). ECF 52, 60.[2] Carrier411 filed its motion to dismiss on May 7, 2026. ECF 66. The Defendants (excepting Carrier411) filed a joint reply in support on May 14, 2026. ECF 68. The matter is now ripe for review. For the reasons discussed below, the Court GRANTS the Dismissal Motions and hereby DISMISSES Plaintiff's Third Amended Complaint.

## I.   BACKGROUND

The procedural background for this case is lengthy and unwieldly. As such, the Court only recounts those filings and events necessary for adjudicating the Dismissal Motions.

On December 10, 2025, Plaintiff filed her initial complaint ("Initial Complaint") in Cuyahoga County Court of Common Pleas ("State Court"). ECF 1-1. In the Initial Complaint, Plaintiff identified eleven defendants, including:[3] (1) Internet Truckstop Payments LLC.;[4] (2) Internet Truckstop Payments, LLC d/b/a Truckstop Factoring; (3) Truckstop Payments LLC; (4) Loadpay LLC; (5) Grizella LLC (SaferWatch/PostEverywhere); (6) RMIS – Registry Monitoring Insurance Service; (7) Denim Labs, Inc. (Denim Factoring); (8) Highway App, Inc.; (9) DAT Freight & Analytics (DAT Solutions, LLC) ("DAT"); (10) John Doe Brokers 1-50; and (11) John Doe Factoring Partners 1-50. The Initial Complaint was thirty-two pages long, exclusive of summons requests. That same day, Plaintiff also filed a motion for a temporary restraining order. ECF 1-4. That motion was denied by the State Court *sua sponte* on December 16, 2025.

---

[2] Plaintiff's supplemental filing referenced the stricken version of GenLogs' motion to dismiss, including the inadvertent work product disclosures, despite being on notice for several days that that specific version was stricken from the record. GenLogs promptly filed a motion to seal Plaintiff's supplemental filing and strike the relevant paragraphs therein. ECF 64. The Court granted GenLogs' motion.

[3] Unless otherwise noted, all named parties in Plaintiff's multiple complaints are stylized as Plaintiff wrote them.

[4] This is the name used by Plaintiff in the case caption. However, in the introduction to the Initial Complaint, she identifies the party as "Internet Truckstop Group, LLC (Truckstop.com)". *See* ECF 1-1, at 7. As further discussed later in this Opinion, Plaintiff uses a variety of names and identifies a number of alleged subsidiaries/affiliates of proper defendant Internet Truckstop Payments, LLC. "While the case caption on the docket may include other listed entities, *none* of these entities are correctly identified as affiliates of Internet Truckstop Payments, LLC, and are not properly listed defendants under Federal Rule of Civil Procedure 10(a)." ECF 47, at 4 n.1 (emphasis in original).

On December 17, 2025, Plaintiff filed an amended complaint ("First Amended Complaint"). ECF 1-2. The First Amended Complaint added several defendants, including: (1) Internet Truckstop Group, LLC; (2) Truckstop.com, LLC, also known as Truckstop; Truckstop Load Board; The Internet Truckstop; (3) Risk Factors® c/o RMIS, LLC; (4) SaferWatch® c/o RMIS, LLC; (5) C.H. Robinson Worldwide, Inc.; (6) Magellan Transport Logistics, Inc.; (7) MacroPoint, Inc.; and (8) Total Quality Logistics, LLC (TQL). Other defendants were renamed or otherwise identified differently, including: (1) Truckstop Factoring, a trade name and operating division of Internet Truckstop Payments, LLC; (2) Grizella, Inc. c/o RMIS, LLC; (3) Denim, Inc.; (4) John Doe Brokers 1-29,061; and (5) John Doe Factoring Partners 1-100. Loadpay LLC was removed as a defendant. The First Amended Complaint was 245 page long, exclusive of summons requests and exhibits.

Plaintiff then, without leave of the State Court as required under Ohio Civil Rule 15(A), filed yet another amended complaint ("Second Amended Complaint") on January 14, 2026. ECF 1-3. Like the First Amended Complaint, the Second Amended Complaint added new defendants, including: (1) Motive Technologies, gomotive.com f/k/a Keep Trucking; (2) Carrier411 Services, Carrier411.com; and (3) Flock Safety, Flock Group Inc., Flock Cameras. Likewise, other defendants were renamed otherwise identified differently, including grouping Internet Truckstop Payments, LLC, dba – Denim, Truckstop Load board, RMIS, SaferWatch, and RiskFactor all together as "Defendant 1." The Second Amended Complaint was 524 pages, exclusive of summons requests and exhibits. Two days later, on January 16, 2026, Plaintiff filed another motion for a temporary restraining order against the defendants, which the State Court denied as moot on January 20, 2026, after the case was removed to federal court.

3

Defendant C.H. Robinson timely removed the matter to federal court on January 20, 2026. ECF 1. Only some of the many defendants in State Court had been allegedly served, and only three of them had been properly identified and served such that C.H. Robinson was able to obtain their consent for removal (i.e., DAT, Magellan, and TQL). "C.H. Robinson attempted to identify a registered service agent or counsel for MacroPoint, Highway App, and Denim through Secretary of State records and corporate hierarchy research but was either unable to identify a registered service agent or unable to identify means to contact counsel." ECF 1, ¶ 27. In fact, Plaintiff apparently mailed State Court summons to defendants using incorrect addresses. *See, e.g.*, ECF 43, at 2 ("On December 24, 2025, Plaintiff mailed a copy of the summons to Highway at '440 N. Wolfe Rd. Sunnyvale, CA 94085 C/O Registered Agent' … an address that has no connection to Highway.").

Following removal to federal court, many defendants filed motions to dismiss the First Amended Complaint and motions to strike the Second Amended Complaint. *See, e.g.*, ECF 11, 15, 19, 26, 27. At the same time, Plaintiff filed yet another motion for a temporary restraining order on January 29, 2026. ECF 22. On February 10, 2026, the Court *sua sponte* dismissed the First Amended Complaint and Second Amended Complaint for failure to comply with federal pleading requirements and pursuant to *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("[A] district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of [the] complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion."). ECF 30. The Court dismissed all other pending motions as moot, and gave Plaintiff thirty days after the issuance of that order (*i.e.*, March 12, 2026) to both "file and serve upon all named Defendants" a new amended complaint "no more than 40 pages in length and that complies

4

with the Federal Rules of Civil Procedure (including Rules 8, 10, and 12)." *Id.*, at 3-4 (emphasis added).

In accordance with the Court's order, Plaintiff filed a new amended complaint ("Third Amended Complaint") on March 5, 2026. ECF 32. The Third Amended Complaint identified nine specific Defendants: (1) Internet Truckstop Payments, LLC, (Truckstop) "d/b/a RMIS, d/b/a Truckstop, and d/b/a Denim and other subsidiaries"; (2) Highway App, Inc.; (3) Carrier411 CarrierGuard LLC; (4) DAT Freight & Analytics, LLC; (5) Total Quality Logistics, LLC; (6) C.H. Robinson Worldwide, Inc.; (7) Magellan Transport Logistics, Inc.; (8) Motive Technologies, Inc. "f/k/a KeepTruckin, Inc."; and (9) GenLogs, Inc. However, Plaintiff only requested (and, thus, was issued) summons for: (1) Carrier411 CarrierGuard LLC; (2) Internet Truckstop Group LLC; (3) Internet Truckstop Risk Purchasing Group, LLC;[5] (4) GenLogs Corporation; (5) Denim Labs, Inc.; (6) The Internet Truckstop LLC; and (7) Motive Technologies, Inc. ECF 32, 33. Many of the entities named in the summons requests did not match the names of the entities named as defendants in the Third Amended Complaint.

The Third Amended Complaint alleges four claims against all defendants, collectively: (1) civil RICO violations, 18 U.S.C. § 1962(c), with wire fraud, 18 U.S.C. § 1343, and Hobbs Act violations, 18 U.S.C. § 1951, as the predicate offenses; (2) Sherman Act violations (Counts II and III), 15 U.S.C. §§ 1-2; and (3) tortious interference with business relationships, under Ohio law.

Plaintiff filed six proofs of service over the week-and-a-half spanning March 20 through March 30, 2026, claiming to have served the following defendants via USPS Certified Mail by the accompanying sent and confirmed delivery dates:

---

[5] Despite requesting summons for "Internet Truckstop Risk Purchasing Group, LLC," Plaintiff does not name this entity in the Third Amended Complaint.

(1)  Motive Technologies, Inc. (sent March 5, 2026) (delivered March 9, 2026), ECF 37;

(2)  Internet Truckstop Payments, LLC and "all DBA's, AKA, known and unknown subsidiaries including Registered Monitoring Insurance Service, RMIS, Denim Labs, Inc, Internet Truckstop Group LLC, Truckstop Group LLC, Truckstop Loadboard, Internet Truckstop Payments, LLC, SaferWatch, [and] RiskFactor" (sent March 5, 2026) (delivered March 10, 2026), ECF 38;[6]

(3)  Internet Truckstop LLC (sent March 5, 2026) (delivered March 9, 2026), ECF 39;[7]

(4)  Denim Labs, Inc. (sent March 5, 2026)[8] (delivered March 10, 2026), ECF 40;

(5)  GenLogs, Inc. (sent March 5, 2026)[9] (delivered March 17, 2026), ECF 41; and

(6)  Internet Truckstop Group, LLC (sent March 5, 2026)[10] (delivered March 17, 2026), ECF 42.

On March 13, 2026, DAT filed a motion to dismiss for failure to state a claim. ECF 34. That same day, the Court issued a non-document order directing "[a]ny Defendant wishing to join [DAT's] Motion to Dismiss … is hereby directed to file a motion for joinder no later than 5:00pm on Monday, March 23, 2026." Later that same day, Plaintiff filed a notice of voluntary dismissal of DAT under Federal Rule of Civil Procedure 41(a)(1). ECF 35. The Court issued a marginal order approving Plaintiff's notice of voluntary dismissal. ECF 36. In the interest of judicial

---

[6] Listed above are the entities identified in the caption of Plaintiff's filing. However, in the body of the notice, Plaintiff alleges that this service also covers "[t]he following affiliated entities [] named on the docket as doing business as or also known as Internet Truckstop Payments, LLC": "d/b/a Internet Truckstop Group LLC a/k/a Internet Truckstop Risk Purchasing Group, LLC a/k/a Denim Labs, Inc. a/k/a Internet Truckstop LLC d/b/a Denim d/b/a Truckstop Load board d/b/a RMIS d/b/a SaferWatch d/b/a RiskFactor d/b/a CSC Lawyers Incorporating Service." ECF 38, ¶ 4. However, "Plaintiff did not serve separately any of the alleged 'affiliated entities.' " ECF 48, at 5.

[7] Though the body of Plaintiff's notice and copy of the green card attached thereto identify the served entity as "The Internet Truckstop LLC," both the caption and title of the notice are identical to their counterparts on the notice of service for "Internet Truckstop Payments, LLC."

[8] Unlike her other notices of service, Plaintiff does not explicitly identify a send date for this service. However, looking up the USPS tracking number suggests that it was mailed on March 5, 2026, which is the first date associated with this tracking number.

[9] See, *supra* note 8, for an explanation also applying to this notice of service.

[10] See, *supra* note 8, for an explanation also applying to this notice of service.

economy, the Court also issued a non-document order setting a briefing schedule for motions to dismiss and encouraged Defendants "to coordinate and jointly file motions wherever possible." As previously noted, the Defendants and Plaintiff timely filed their pleadings.

On April 29, 2026, Plaintiff filed an "Emergency Motion for Temporary Training Order, Order to Show Cause Re: Preliminary Injunction, and Notice of Obstruction of Federal Proceedings." ECF 62. Plaintiff simultaneously also filed a motion for sanctions against "Defendant Carrier411 Services, and its principal Darren Brewer." ECF 64. Both motions were filed just two days after Plaintiff filed a supplemental filing for her response to the Dismissal Motions. *See* ECF 60. Collectively, these three filings total several hundred pages. That same day, the Court *sua sponte* denied both of Plaintiff's new motions for, again, failing to comply with federal pleading standards. ECF 65, at 1. Plaintiff also filed a "notice of confirmed service" and "notice of failure to appear" regarding Carrier411 Services, Inc., alleging that, "following an initial service attempt to Carrier411's registered agent in Delaware that was rejected," she re-served Carrier411 Services on or about April 7, 2026, and that service was delivered on April 16, 2026.[11] ECF 63.

## II. LEGAL STANDARD

It should be noted that not every Defendant moved for a dismissal on the merits, such as one pursuant to Rule 12(b)(6), and it is not clear from the face of the Third Amended Complaint and the record whether all intended defendants have been served.[12] But "[a] district court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss

---

[11] Plaintiff does not indicate when she first learned that her first service attempt was defective. Additionally, the USPS tracking number states that USPS did not take possession of the mail until April 11, 2026. At the time of filing the notice on April 29, 2026, Plaintiff notes that she had not yet received a signed green card. ECF 63, ¶ 3.

[12] For instance, Defendant Highway's motion only moves for dismissal under Rules 12(b)(4) and 12(b)(5), both of which are jurisdictional issues. Further, Plaintiff purports through both her Third Amended Complaint and requested summons to be suing various alleged subsidiary and related entities of the Defendants.

where such defendants are in a position similar to that of moving defendants." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742–43 (9th Cir. 2008) (cleaned up) (first citing *Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 802 (9th Cir. 1995); and then quoting *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981)); *see also Dobronski v. Anthony J. Russo, Jr., PA*, 2024 WL 4363118, at *1 n.3 (E.D. Mich. Sept. 30, 2024) (finding the same and citing *Silverton*, 644 F.2d at 1345). So long as plaintiff has been given notice of the potential for dismissal with prejudice and an opportunity to be heard, *sua sponte* dismissal for failure to state a claim is proper. *See Morrison v. Tomano*, 755 F.2d 515, 517 (6th Cir. 1985) ("We therefore hold that a *sua sponte* dismissal for failure to state a claim is not necessarily rendered invalid because of lack of service on the defendant or failure to provide the defendant an opportunity to respond."); *Gold Crest, LLC v. Project Light, LLC*, 525 F.Supp.3d 826, 832 n.4 (N.D. Ohio 2021) (collecting cases). Here, Plaintiff alleges all four of her claims against all intended defendants collectively. And there can be no doubt that after four versions of her complaint (the Initial Complaint plus three amended complaints), with eight motions to dismiss (almost all with prejudice) on just the current operative version, that Plaintiff is clearly on notice that dismissal with prejudice is an option. Accordingly, the Court finds it appropriate to consider dismissal with prejudice for failure to state a claim to all defendants, whether they have so moved or not.[13]

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012). Under the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim

---

[13] As explained further in, because the Court is granting dismissal with prejudice as to all defendants for failure to state a claim, it is unnecessary for the Court to address the other Rule 12(b) defenses raised, such as improper forum, lack of personal jurisdiction, insufficient process, and insufficient service of process.

showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, to survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The plausibility standard "asks for more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Complaints alleging "naked assertion[s]" devoid of "further factual enhancement" will not survive a motion to dismiss. *Twombly*, 550 U.S. at 557. In addition, simply reciting the elements of a cause of action or legal conclusions will not suffice. *Iqbal*, 556 U.S. at 678.

"Although federal courts are inclined to grant leave to amend following a dismissal order, there are circumstances where amendment will not be allowed." *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir. 1991). "One such obvious circumstance is where the amended complaint could not withstand a Rule 12(b)(6) motion." *In re Royal Appliance Securities Litigation*, 64 F.3d 663, 1995 WL 490131, at *5 (6th Cir. 1995) (unpublished table decision) (quoting *Sinay*, 948 F.2d at 1041). Dismissal with prejudice on a Rule 12(b)(6) motion is appropriate where "[t]he district court found that plaintiffs' proposed amended complaint was not substantively different, and, hence, could not withstand a motion to dismiss." *Id.*; *see also* Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.").

## III. ANALYSIS

As noted, Plaintiff raises four claims in her Third Amended Complaint. The Court will address each of these claims in turn.

9

### A.  Civil RICO Violations

"To establish a violation of § 1962(c), a plaintiff must allege: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Ga.*, 768 F. App'x 446, 453 (6th Cir. 2019) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). "A pattern is defined as a minimum of two acts of racketeering activity within ten years of each other, although two acts may not be sufficient." *Id.* (citing 18 U.S.C. § 1961(5), then *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989)). A court uses the "relationship plus continuity" test to determine whether plaintiff has established a pattern. This test requires a plaintiff "[to] show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 493 U.S. at 239 (emphasis in original). The alleged racketeering activity must be both the proximate and "but for" cause of the plaintiff's injury. *See Holmes v. Secs Inv. Prot. Corp.*, 503 U.S 258, 259 (1992). The alleged acts must be plead "with the requisite particularity" required by Rule 9(b). *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006).

The Third Amended Complaint contains nearly 200 paragraphs across its thirty-five substantive pages. Nowhere in those nearly 200 paragraphs, however, does Plaintiff make any specific allegations of illegal conduct against any of the Defendants. Instead, Plaintiff makes blanket statements, such as asserting that "each Defendant participated in the operations and management of the enterprise by making and enforcing the carrier-approval, load access, tracking, reputational, and payment control decisions that governed the enterprises' functioning," without stating how each of the Defendants played a role in the alleged enterprise. ECF 32, ¶ 83. Plaintiff argues that Defendants "operate and participate in a coordinate enterprise" "through these coordinated and interdependent activities," but never identifies any particular activity beyond the

general use of various technology platforms (some of which are operated by a defendant) in the trucking industry. *Id.*, ¶ 33.

The Sixth Circuit has made clear that it is insufficient to merely "list[] a string of entities allegedly comprising the enterprise, and then list[] a string of supposed racketeering activities in which the enterprise purportedly engages." *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000). Rather, "the complaint must contain facts suggesting that the behavior of the listed entities is 'coordinated' in such a way that they function as a 'continuing unit.'" *Id.*, at 781-82 (citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993)). It is also improper for a RICO plaintiff to make "shotgun allegations" against defendants as a group. *See Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) (affirming the district court's dismissal where "[t]he complaint identifie[d] relationships between various of the defendants but it allege[d] misrepresentations without sufficiently identifying which defendants made them").

Plaintiff does just what the Sixth Circuit has prohibited in the Third Amended Complaint. She alleges that Defendants participated in an alleged "association-in-fact" enterprise, but never identifies which defendants participated in which predicate acts. She also "fails to allege any basic facts detailing when, how or where any of the alleged illicit activity of said 'enterprise' took place." ECF 45-1, at 6. "The Third Amended Complaint describes an industry ecosystem in which different companies provide different services. But an industry is not a RICO enterprise merely because its participants use technology, data, or platforms." ECF 66, at 16. The Third Amended Complaint makes it impossible for the Court, let alone the Defendants, to discern any sort of claim that could be considered "short and plain" in compliance with Rule 8's pleading standards, nor made with sufficient particularity in compliance with Rule 9(b).

11

Even if Plaintiff had managed to adequately plead a relationship between Defendants (which she has not), the Third Amended Complaint still fails to establish that the alleged actions supporting the RICO claim are sufficiently related and continuous. Indeed, Plaintiff admits to having obtained operating authority in May 2025 and beginning operations in July 2025. ECF 32, ¶ 49. Both dates are less than one year ago—less than the amount of time the Sixth Circuit has recognized as being required to establish the continuity requirement needed for a viable RICO claim. *See Moon*, 465 F.3d at 725 ("Although there are no rigid rules regarding what amounts to 'a substantial period of time,' racketeering activity lasting only 'a few weeks or months and threatening no future criminal conduct' is insufficient." (quoting *H.J., Inc.*, 492 U.S. at 242)); *cf. Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir.), *cert. denied*, 513 U.S. 1017 (1994) (predicate acts over seventeen months did not satisfy the closed period analysis); *Vild v. Visconsi*, 956 F.2d 560, 569 (6th Cir.), *cert. denied*, 506 U.S. 832 (1992) (predicate acts over six or seven months not sufficient under closed-period analysis).

Additionally, Plaintiff makes general allegations that Defendants engaged in wire fraud and violated the Hobbs Act as the predicate offenses making up the alleged pattern of racketeering activity, but does not plead these allegations with the sufficiency and particularity. The elements of wire fraud consist of "(1) a scheme to defraud, and (2) use of the [wires] in furtherance of the scheme." *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 404 (6th Cir. 2012) (internal citations omitted). "When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Id.* (quoting *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)). It is not sufficient to provide only threadbare accusations

that defendants engaged in "interstate transmission" or "interstate maintenance." *See generally* ECF 32, ¶¶ 100-36. The Court will not "scour the allegations of a complaint to link unnamed defendants to particular acts of fraud without some reasoned and plausible way to do so." *Cisneros v. Petland*, Inc., 972 F.3d 1204, 1217 (11th Cir. 2020).

A plaintiff claiming a Hobbs Act violation of extortion must establish that the defendant "obstruct[ed], delay[ed], or affect[ed] commerce or the movement of any article or commodity in commerce, by ... extortion or attempt[ed] or conspir[ed] so to do, or committ[ed] or threaten[ed] physical violence to any person or property in furtherance of a plan or purpose to do [so]." 18 U.S.C. § 1951(a). Extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Like the allegations of wire fraud, Plaintiff provides nothing more than barebones accusations of "economic leverage." At best, Plaintiff identifies one act with sufficient specificity that the relevant defendant <u>might</u> be able to defend against it. ECF 32, ¶ 117 (failing to provide any dates, but describing a specific incident involving TQL). But the suggestion that "if Plaintiff doesn't want to be blacklisted Plaintiff should comply with TQL's demand" is not property within the meaning of the Hobbs Act, and Plaintiff's own "understanding" of "the verbal commitment," without more, cannot constitute a real threat. Thus, this cannot form a predicate act for a civil RICO claim.

Plaintiff attempts to rectify these deficiencies in her Opposition, but this attempt must fail as a matter of law. Plaintiff attaches to her Opposition over 600 pages of exhibits purporting to support her claims—none of which were attached to the Third Amended Complaint. *See generally* ECF 52 (340 pages of exhibits) and ECF 60 (287 pages of exhibits). It is well-settled that "[t]he court may not … take into account additional facts asserted in a memorandum opposing the motion

to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)." *Bates v. Green Farms Condo. Ass'n.*, 958 F.3d 470, 483-484 (6th Cir.2020) (quotation omitted). Plaintiff cannot rely on new factual claims and conclusory arguments made only for the first time in her Opposition to save her lawsuit.[14] *See id.* ("Plaintiffs cannot … amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint."); *see also Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 322 (6th Cir. 2017); *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014).

In sum, Plaintiff has failed to plausibly allege the existence of an enterprise, let alone any predicate acts supporting a pattern of racketeering, in the Third Amended Complaint. The Court accordingly dismisses the RICO claim as to all defendants.

## B. Sherman Act Violations

At the outset, "[a] plaintiff must first define the relevant market in order to state a claim under the antitrust statutes." *Cupp v. Alberto-Culver U.S.A., Inc.*, 310 F.Supp.2d 963, 969 (W.D. Tenn. 2004) (granting a motion to dismiss Sherman Act Sections 1 and 2 claim when plaintiff failed to define the market); *see also Potters Med. Ctr. v. City Hosp. Ass'n*, 800 F.2d 568, 574 (6th Cir. 1986) ("Thus, before reaching the merits of an antitrust claim, it is necessary to identify the relevant markets."). "The relevant market analysis includes both a product market and a geographical market." *Cupp*, 310 F.Supp.2d at 970 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 324 (1962)). General references to the "freight brokers" and "broker facing platforms" (which could, arguably, be understood to refer to different markets) are insufficient to

---

[14] In her Opposition, Plaintiff notes that "[t]he Court may convert this motion [to dismiss] to summary judgment under Rule 56, entitling Plaintiff to discovery [sic] the agreement TQL now seeks to enforce." ECF 52, ¶ 85. Plaintiff bases this on an affidavit TQL attached to its motion to dismiss, ECF 45-2, arguing that it "introduces matters outside the pleadings," ECF 52, ¶ 85. Assuming, without determining, that the affidavit improperly introduces matters outside the pleadings, it is entirely within the Court's discretion whether to consider that information. The Court declines to consider TQL's affidavit and will not convert this motion practice to a motion for summary judgment. The Court, likewise, declines to consider any of sixty-nine exhibits Plaintiffs attaches to her Opposition.

satisfy this requirement. Accusations relating to "market access" in "all interstate commerce" are not a properly defined product and geographical market. Failure to define a relevant market is a proper ground for dismissal under Rule 12(b)(6). *See Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 919 (6th Cir. 2009); *NHL Players' Ass'n. v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 719-20 (6th Cir. 2003). Plaintiff's claims under both Section 1 and Section 2 of the Sherman Act are doomed to fail from the outset.

But even assuming Plaintiff had demonstrated the existence of a relevant market, "[i]n order to establish an antitrust claim [under Section 1], [a plaintiff] must prove that [the defendants] (1) participated in an agreement that (2) unreasonably restrained trade in the relevant market." *NHL Players' Ass'n*, 325 F.3d at 718. "While a showing of parallel 'business behavior is admissible circumstantial evidence from which the fact finder may infer agreement,' it falls short of 'conclusively establish[ing] agreement or ... itself constitut[ing] a Sherman Act offense.'" *Twombly*, 550 U.S. at 553 (quoting *Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540-41 (1954)). "The inadequacy of showing parallel conduct or interdependence, without more, mirrors the ambiguity of the behavior: consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Id.* at 554.

Throughout the Third Amended Complaint, Plaintiff claims that Defendants "operate broker-facing platforms within a broader freight-technology ecosystem that integrates tracking, surveillance, and compliance verification tools used by brokers to monitor and evaluate motor carriers in real time." ECF 32, ¶ 41. The use of common platforms certainly implies parallel conduct, but it is no different than any other industry in which multiple parties use the same systems to conduct business. Even Plaintiff's more specific allegation that Defendants had an

15

agreement "implemented through their collective use of Carrier411" which controlled "carrier reputational information" by posting adverse reports of carrier driving history is insufficient to establish any sort of specific agreement amongst the defendants, let alone that such an agreement is unlawful. ECF 32, ¶ 142. Plaintiff's claim for a Section 1 violation fails.

Section 2 of the Sherman Act prohibits three actions: monopolization, attempted monopolization, and conspiracy to monopolize. Monopolization requires proof of: "(1) the possession of monopoly power in the relevant market[;] and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). "Monopoly power" is defined as "the power to control prices or exclude competition." *Id.* (quotation omitted) (finding that a monopoly requires a "predominant share" in the relevant market and defining the market itself). To prove "attempted monopolization," a plaintiff must demonstrate: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). "Courts have held, moreover, that the mere intention to exclude competition and to expand one's own business is not sufficient to show a specific intent to monopolize because all lawful competition aims to defeat and drive out competitors." *Re/Max Int'l v. Realty One, Inc.*, 900 F. Supp. 132, 154 (N.D. Ohio 1995) (cleaned up), *aff'd*, 173 F.3d 995 (6th Cir. 1999). A conspiracy to monopolize contains the same elements as the first two claims but also requires proof of concerted activity between the defendants. *See Superior Prod. P'ship v. Gordon Auto Body Parts Co., Ltd.*, 784 F.3d 311, 318 (6th Cir. 2015) (citing *Potters Med. Ctr.*, 800 F.2d at 574). Finally, "for a completed monopolization claim to succeed, the plaintiff must prove a general intent

16

on the part of the monopolist to exclude; while by contrast, to prevail on a mere attempt claim, the plaintiff must prove a specific intent to destroy competition or build a monopoly." *Conwood Co. v. United States Tobacco Co.*, 290 F.3d 768, 782 (6th Cir. 2002) (cleaned up).

Like her claim under Section 1, Plaintiff's claim under Section 2 must also fail. At the outset, because Plaintiff levies this claim against all Defendants, she necessarily can only allege conspiracy to monopolize. *See American Needle, Inc v. National Football League*, 560 U.S. 183, 190-91 (2010) (discussing Congress' intent to distinguish unilateral actions under Section 2 from the conspiracy aspect necessary to establish multilateral actions under Sections 1 and 2); *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 767 & n.13 (1984) (observing that Section 2 of the Sherman Act only reaches concerted behavior "[b]y making a conspiracy to monopolize unlawful," while monopolization and attempted monopolization are necessarily unilateral acts). Indeed, the Third Amended Complaint is rife with references to "Defendants['] collective control of the broker-facing platforms" and "coordinated use of these systems." ECF 32, ¶¶ 161-62 (emphasis added in both). However, Plaintiff never alleges how Defendants are intentionally working in concert, let alone that they are doing so in an attempt to monopolize a market (that is also not defined). And "[b]ecause § 2 conspiracy to monopolize claims require proof of concerted activity, just as § 1 conspiracy claims do, '[t]he claim of a conspiracy to monopolize fails for the same reason as did the [plaintiffs'] section 1 claims....'" *Potters Med. Ctr*, 800 F.2d at 574 (quoting *Smith v. N. Mich. Hosps., Inc.*, 703 F.2d 942, 954 (6th Cir. 1983)).

To the extent that the Third Amended Complaint can be read to allege claims of monopolization or attempted monopolization against any individual defendant, those claims must also fail. Both claims require Plaintiff "to show that the defendant, in fact, possesses monopoly power." *Conwood*, 290 F.3d at 782. But "[t]he standard for monopoly power appears to be very

17

high, and market share is typically a determining factor." *In re Southeastern Milk Antitrust Litigation*, 801 F.Supp.2d 705, 725 (E.D. Tenn. 2011) (citing *Grinnell*, 384 U.S. at 570). "In the Sixth Circuit, it appears that market share is a 'starting point' in assessing market power and that the threshold is, indeed, very high." *Id.* (collecting Sixth Circuit cases demonstrating that 75-80% or greater is a "starting point," while finding that market shares below 50 or 60% do not constitute market power). Nowhere in the Third Amended Complaint does Plaintiff allege that any one defendant "possesses monopoly power in a properly defined market, attempted to acquire monopoly power, or engaged in exclusionary conduct" ECF 66, at 19. Rather, Plaintiff continues to make only the same conclusory statements that have doomed her other claims. *See, e.g.*, ECF 32, ¶¶ 158-64. Nor does Plaintiff establish any sort of connection between the alleged monopolization and her alleged injury. *See, e.g.*, *id.*, ¶ 167 (stating that Plaintiff "suffered antitrust injury" "[a]s a direct and proximate result of Defendants' monopolization, attempted monopolization, and conspiracy to monopolize" without ever explaining how they are connected).

In sum, both the Section 1 and Section 2 claims must fail. The Court dismisses Counts II and III as to all defendants.

### C.  Tortious Interference with Business Relationships

Finally, Plaintiff alleges Defendants tortiously interfered with her business relationships. "The elements essential to recovery for a tortious interference with a business relationship are: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Barilla v. Patella*, 144 Ohio App.3d 524, 760 N.E.2d 898, 904 (Ct. App. 2001) (quotation omitted). A defendant's conduct is only tortious if it had no privilege to engage in the complained-of activity. *See id.* Further, the plaintiff must identify <u>specific</u> business relationships that the defendant(s)

improperly interfered with. *See Barrio Bros., LLC v. Revolucion, LLC*, Case No. 18-cv-2052, 2020 WL 3547014, at \*7 (N.D. Ohio Jun. 30, 2020) ("A vague assertion that a party interfered with certain unspecified business relationships is insufficient to state a claim." (citing *Wilkey v. Hull*, 366 F. App'x 634, 638 (6th Cir. 2010))); *see also Wilkey*, 366 F. App'x at 638 (affirming dismissal of tortious interference with business relations claims where "[plaintiff] merely states that [defendant] 'interfered' with certain unspecified business relationship" because such "vague assertion of interference … is just a 'legal conclusion' that is itself entitled to no weight." (citation omitted)).

Here, Plaintiff fails to articulate or allege in the Third Amended Complaint <u>any</u> specific business relationship or contract that was interfered with by any of the Defendants, <u>how</u> any Defendant knew of her business relationships or contracts, and <u>how</u> any Defendant interfered with her business relationships or contracts. It is insufficient to simply state that "Defendants had knowledge of these relationships and of Plaintiff's expectation of obtaining and performing transportation for compensation." ECF 32, ¶ 173. By failing to explain how any defendant interfered with her relationships or contracts, Plaintiff further failed to articulate how any defendant's alleged misconduct was improper or not justified. Merely stating that "Defendants acted with actual malice and conscious disregard for Plaintiff's rights and the rights of similarly situated motor carriers" is conclusory and, thus, insufficient. *Id.*, ¶ 178.

Accordingly, Plaintiff's claim for tortious interference with business relationships must fail. The Court dismisses Count IV as to all defendants.

**IV. CONCLUSION**

As discussed above, all four of Plaintiff's claims against all of the defendants must be dismissed for failure to state a claim under Rule 12(b)(6). And to the extent that any of Plaintiff's Opposition constitutes a fourth attempt to amend the complaint to cure deficiencies, this Court would deny that motion. A motion to amend "should be denied if the amendment ... would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). Plaintiff has had four opportunities to plainly state her claims with sufficient particularity, potentially five or six opportunities if the Court were to consider Plaintiff's new allegations throughout her Opposition. Nothing in her many attempts cures the multiple deficiencies that litter her lawsuit. This Court previously made clear, *see* ECF 30, that although a *pro se* litigant is entitled to a liberal construction of her pleadings and filings, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), she is still required to follow procedural rules, *see McNeil v. United States*, 508 U.S. 106, 113 (1993). Plaintiff has had more than ample opportunities to cure her failure to state a claim on which relief could be granted. The Court will not grant her more.

Accordingly, the Dismissal Motions are **GRANTED** and the Third Amended Complaint is **DISMISSED WITH PREJUDICE** as to all defendants.

   **IT IS SO ORDERED.**

Dated: May 27, 2026                        *s/ Dan Aaron Polster*
                                            United States District Judge